[No. 20814. In Bank. — December 29, 1891.]

THE PEOPLE, RESPONDENT, v. ALEXANDER THOMSON, APPELLANT.

CRIMINAL LAW — HOMICIDE — SELF-DEFENSE — EVIDENCE — TITLE TO LAND. — Where a homicide is justified on the plea of self-defense from a threatened personal injury, and there is no question of defense of property or habitation involved in the trial, evidence of title of the deceased to the land on which the homicide was committed is not admissible for the prosecution.

ID. — CROSS-EXAMINATION — MOTIVE OF PROSECUTING WITNESS. — In a criminal prosecution, where a witness for the prosecution testified that "shortly after the shooting he went to the scene of the homicide, and took his rifle with him," it is error for the court to refuse to allow the defendant to ask the witness, on cross-examination, for what purpose he took his rifle.

ID. — LATITUDE OF CROSS-EXAMINATION — STATE OF MIND OF WITNESS. — The state of mind of a witness as to his bias or prejudice, his interests involved, and his hostility or friendship toward the parties, are always proper matters for investigation by the adverse party, upon cross-examination.

ID. — ACTS AND CONDUCT OF DECEASED — SELF-DEFENSE — HOSTILITY — EVIDENCE — INSTRUCTION. — In a prosecution for murder, where the defendant admitted the killing, and insisted that it was done in self-defense, evidence of the acts and conduct of the deceased, either in the nature of overt acts of hostility or threats communicated or uncommunicated to the defendant, is proper evidence to be considered by the jury upon the issue as to whether the deceased or the defendant was the aggressor; and where there is nothing in the record on appeal to indicate that the acts and conduct of the deceased were introduced solely for the purpose of showing an unfriendly relation between the deceased and the defendant, it is prejudicial error to instruct the jury that "testimony of the acts and conduct of the deceased have been introduced by the defendant for the purpose of showing that the relations existing between the deceased and the defendant were unfriendly, and for that purpose alone; and you are charged to consider it for that purpose only; and in weighing such evidence you are to consider the remoteness of it and the difficulty of meeting it, owing to the lapse of time, by contradictory evidence, and weigh it carefully."

ID. — WEIGHT OF EVIDENCE — INSTRUCTION — PROVINCE OF JURY. — Where the acts and conduct of the deceased showing hostility toward the defendant, according to the evidence of the defense, extended down to the very moment of the killing, it is prejudicial error to instruct the jury that in weighing such evidence they are to consider the remoteness of it, the difficulty of meeting it, owing to lapse of time, by contradictory evidence, and weigh it carefully. Such instruction trenches upon the province of the jury.

ID. — CONFLICTING INSTRUCTIONS — SELF-DEFENSE. — The fact that the court, in other portions of its charge, correctly stated the law of self-defense and the object and purpose for which the acts and conduct of the deceased could be exhibited to the jury did not cure the defects in an erroneous instruction as to such acts and conduct and render the error harmless. When conflicting instructions are given, one of which is erroneous, the minds of the jury must have been confused, and it cannot be said that the jury did not act upon the erroneous instruction in rendering their verdict.

ID. — MALICE — EVIDENCE — PREVIOUS DIFFICULTIES. — Although for the purpose of showing malice on the part of a defendant accused of murder, the prosecution would be entitled to prove that the parties to the homicide had had difficulties upon previous occasions, yet such matters should be shown in a general way, and it is not proper to enter into an examination of them in detail for the purpose of determining which of the parties was in the wrong.

APPEAL from a judgment of the Superior Court of Amador County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*W. J. McGee,* and *Reddy, Campbell & Metson,* for Appellant.

The court erred in allowing the prosecution to raise

the issue and prove the title to the land upon which the deceased was shot. (*People* v. *Honshell*, 10 Cal. 87.) The admission of such evidence was an error, and injury is presumed from it, unless the contrary clearly appears from the record. (*People* v. *Casey*, 65 Cal. 260; *Mac-Dougall* v. *Central R. R. Co.*, 63 Cal. 434; *People* v. *Furtado*, 57 Cal. 347; *Leonard* v. *Kingsley*, 50 Cal. 628; *People* v. *Dye*, 75 Cal. 112.) It was error for the court to sustain the objections of the counsel for the prosecution to the questions asked the witness Norris as to "why he took the weapon with him," as it was a proper question to be asked, on cross-examination, for the purpose of showing that the witness was a hostile witness. (*People* v. *Lee Ah Chuck*, 66 Cal. 667; 1 Greenl. Ev., sec. 450; Wharton's Crim. Ev., secs. 475–477, 485; *Harper* v. *Lamping*, 33 Cal. 647, 648.)

*Attorney-General Hart*, and *Deputy Attorney-General Sanders*, for Respondent.

The instructions given were correct. Although the instruction as to the acts and conduct of the deceased was, standing alone, erroneous, yet when taken with the other instructions given, it correctly stated the law. The two taken together declare the law. (*People* v. *Arnold*, 15 Cal. 476; *People* v. *Scoggins*, 37 Cal. 684; *People* v. *Alivtre*, 55 Cal. 264; *People* v. *Travis*, 56 Cal. 251; *People* v. *Tamkin*, 62 Cal. 472.)

GAROUTTE, J. — The appellant was convicted of murder in the first degree, and now appeals from the judgment and order denying his motion for a new trial.

At the trial he admitted the killing, and insisted that the homicide was committed in self-defense.

The prosecution, against the objection of defendant, offered in evidence a United States patent to the tract of land upon which the deceased was killed, for the purpose, as the district attorney stated, of showing that "he was killed upon his own land." There was no question of defense of property or habitation involved in the trial.

The plea was a plea of self-defense, arising from a threatened personal injury; and it was entirely immaterial and foreign to the issue on trial whether the deceased was killed upon his own land or upon the land of another. Such fact could have shed no possible light upon the question of murder or justification for the commission of the homicide. While the assignment of error has merit, owing to the views we entertain upon other matters we do not deem it necessary to decide the question as to whether the error is of such a character as to justify a reversal of the judgment.

The witness Norris was an important witness for the prosecution. Upon cross-examination, he testified that "shortly after the shooting he went to the scene of the homicide, and took his rifle with him."

Q. "What did you take your rifle with you for?"

An objection to this question was sustained, upon the ground that it was not cross-examination.

Upon redirect examination, the witness stated: "I am sorry the defendant got into that trouble." And defendant's counsel then asked him the following: —

Q. "And you expressed your sorrow by going out toward the house with a Winchester rifle?"

An objection was sustained to this question, upon the grounds already stated. These rulings of the court were erroneous.

It is elementary law, supported by all authority, that the state of mind of a witness as to his bias or prejudice, his interests involved, his hostility or friendship toward the parties, are always proper matters for investigation, in order that truth may prevail and falsehood find its proper level. If the inner workings of a witness's mind are actuating his testimony, and the workings of that mind are brought forth to the light and held up in full view before the jury, results will be obtained much more in accord with truth and justice than though the witness's testimony is weighed and measured by his words alone. If the feelings of the witness Norris were so hostile toward the defendant that when he went to the scene of

the homicide he took his rifle with him for the purpose of wreaking vengeance upon the slayer of his friend, that would be a fact proper to be placed before the jurors, as throwing light upon the state of the witness's mind, in order that they might properly weigh his testimony. (See *People* v. *Lee Ah Chuck*, 66 Cal. 667.)

The court gave the jury the following instruction: " Testimony of the acts and conduct of the deceased have been introduced by the defendant for the purpose of showing that the relations existing between the deceased and the defendant were unfriendly, and for that purpose alone, and you are charged to consider it for that purpose only; and in weighing such evidence, you are to consider the remoteness of it, and the difficulty of meeting it, owing to the lapse of time, by contradictory evidence, and weigh it carefully."

This instruction has no law to support it, and requires a reversal of the judgment upon various grounds.

There was evidence introduced by the defendant tending to show that for a period of many years, extending down to the very moment of the shooting, the deceased had, at various times, manifested overt acts of hostility toward the defendant by drawing and exhibiting deadly weapons, threatening his life, etc. There is nothing in the record to indicate that the acts and conduct of the deceased were introduced for the purpose of showing an unfriendly relation between deceased and defendant. Indeed, it does not seem clear why the defense should be zealous in showing such unfriendly relations, for such evidence more properly would be arrayed upon the side of the prosecution. But the evidence was material, and material for a double purpose, and should never have been passed to the jury, limited in effect and practically handicapped out of all usefulness, as was done by the instruction of the court. The evidence was admissible for the purpose of showing that the defendant, as a reasonable man, did believe that he was in danger of losing his life, or suffering great bodily harm at the time he fired the fatal shot. The instruction is so broad in its language as to include

all the acts and all the conduct of the deceased. The defendant testified that the acts and conduct of the deceased immediately prior to the shooting were, that " the deceased advanced toward me three or four steps, with a pistol raised in his hand." Of course, no one will maintain that the evidence of such acts and conduct of the deceased should go to the jury simply for the purpose of showing unfriendly relations. If such were the rule, evidence to support the plea of self-defense would ever be lacking, and the plea itself a myth, for the acts and conduct of the deceased alone furnish the test by which that question is measured and determined. Conceding the instruction was framed with reference to the conduct and acts of deceased occurring at a time prior to the day of the homicide, still, the same principles of law would apply, and the evidence be admissible for the purposes already stated.

Again, in this case a deadly encounter took place; one party was killed; the survivor insists that the killing was done in self-defense, and that the deceased made the first attack. Who was the aggressor was an issue of vital importance to the jury; justice could only be reached by its proper solution, and, as disclosed by the evidence, it was enveloped in doubt. Under these circumstances, all the acts and conduct of the deceased, either in the nature of overt acts of hostility, or threats communicated or uncommunicated, were proper evidence to be considered by the jury as shedding light — to some extent, at least — upon the issue as to whether the deceased or the defendant was the aggressor in this fatal affray. These principles are elementary in criminal law, and a citation of authorities not demanded; but the general principles are found discussed in *People* v. *Arnold,* 15 Cal. 479; *People* v. *Scoggins,* 37 Cal. 677; *People* v. *Travis,* 56 Cal. 252, *People* v. *Tamkin,* 62 Cal. 469.

The latter portion of the instruction under consideration is as follows: " And in weighing such evidence, you are to consider the remoteness of it, the difficulty of

meeting it, owing to lapse of time, by contradictory evidence, and weigh it carefully."

Inasmuch as the acts and conduct of the deceased showing hostility toward the defendant, according to the evidence of the defense, extended down to the very moment of the killing, the word "remoteness" is improperly used, as not being justified by the facts. It is the duty of the court to instruct the jury as to the law of the case. The jury are the only judges as to the weight to be given any special portion or branch of the evidence. The above suggestions, made to them by the court, trenched upon the province of the jury, and were matters, if borne out by the facts of the case, only proper to be suggested by counsel in his plea to the jury; for they were matters of argument, and not matters of law. In other portions of the court's charge, the law of self-defense and the object and purpose for which the acts and conduct of a deceased can be exhibited to the jury are fully, clearly, and correctly stated; yet these portions of the charge cannot cure the defects found in the instruction already considered. A serious conflict exists, which must have confused the minds of the jury, for both instructions could not be followed; the former is bad law, and we know not but that the jury acted upon it in rendering their verdict. (*People* v. *Wong Ah Ngow*, 54 Cal. 154; *People* v. *Bush*, 65 Cal. 134.)

As the case must be remanded for a new trial, there is another matter we will incidentally mention.

For the purpose of showing malice on the part of the defendant, the prosecution is entitled to prove that the parties to the homicide had had difficulties upon previous occasions. These matters may be shown in a general way, and it is not proper to enter into an examination of them in detail for the purpose of determining which of the parties was in the wrong.

In this case, during the progress of the defense, it was developed that defendant's cellar was, at certain seasons of the year, flooded with water, and that the water in defendant's well was impure and unhealthy; that these

matters caused the serious ill-health of defendant's family, and were occasioned by the irrigation of an adjoining tract of land by deceased.

Conceding all these matters to be true, the evidence was irrelevant and incompetent, for it formed no kind or part of a justification by the defendant for the killing of the deceased. Upon cross-examination, and in rebuttal, the prosecution attempted to show that the water in defendant's well was always bad, and that at certain seasons of the year chills and fever were common to the people of the entire neighborhood. These matters were entirely foreign to the issue under investigation, and under no aspect of the case could shed any light upon it, whatever the truth may have been regarding them. The entire evidence in this regard was collateral to the issue, and could only have served the purpose of mystifying and confusing the minds of the jury, by leading them far away from the merits of the cause they were impaneled to decide.

We find no other error in the record.

Let the judgment and order be reversed, and the cause remanded for a new trial.

SHARPSTEIN, J., PATERSON, J., McFARLAND, J., and HARRISON, J., concurred.

DE HAVEN, J., concurring. — I concur in the judgment of reversal, on the ground that the court erred in giving the instruction referred to in the opinion of Mr. Justice Garoutte. It was error to direct the jury that in weighing the testimony referred to in the instruction, the jury must "consider the remoteness of it, and the difficulty of meeting it, owing to the lapse of time, by contradictory evidence, and weigh it carefully."

If the testimony was given by a credible witness, and was not unreasonable or improbable in itself or when compared with other established facts in the case, it was the duty of the jury to accept and act upon it, and they should have been so instructed; and it was not proper for

the court to weaken the force of such testimony by the suggestion that if the witness had placed the occurrences testified to as of a later date, the prosecution might have been able to contradict.