[Civ. No. 681. Third Appellate District.—February 8, 1910.]

# R. W. VAN VALKENBURGH, Respondent, v. D. A. OLD-HAM et al., Defendants; CYNTHIA A. BLACKBURN, Appellant.

FORECLOSURE OF MORTGAGE—DEFENSE—EXECUTION OBTAINED BY FRAUD, MENACE AND UNDUE INFLUENCE.—In action to foreclose a mortgage, a defense that the note and mortgage were not executed by the maker willingly, freely or voluntarily, and that her signature thereto was obtained by plaintiff by fraud, menace and undue influence, set forth in detail in the answer, and disclosing sufficient facts to support the averments, would, if proved, render the note and mortgage void though signed by her, and if executed, fraud, menace, duress or undue influence would render them void. Consent is deemed to have been obtained through one of these causes when it would not have been given if such cause had not existed.

ID.—SUPPORT OF FINDINGS—CONFLICTING EVIDENCE.—Though the testimony of the maker is a pathetic recital of the subjugation of her will and the coercion of her understanding by the pertinacity and misstatements of the stronger personalities interested in obtaining the security, yet where the evidence is conflicting, and the testimony of the witnesses for the plaintiff is such that, in view of the discretion as to the weight of evidence given to the trial court, which found for the plaintiff, it cannot be said, as matter of law, that there was anything in the conduct of the plaintiff which is opposed to good morals, legitimate business methods, or any mandate of the statute, the findings cannot be disturbed.

ID.—TESTIMONY OF WITNESS FOR PLAINTIFF SUPPORTING FINDING.—Where the testimony of a witness for the plaintiff was such, as this court is required to regard it, that the only conclusion to be drawn from it is that no misrepresentation was made, no undue influence exerted nor fraud practiced in the transaction, but that the execution of the note and mortgage was the voluntary act of the appellant, which grew out of a guaranty made by herself of a firm of which the comaker of the note and mortgage was a member who personally agreed to protect her from loss, and that the guaranty was surrendered to her when the note and mortgage were executed, such testimony is sufficient to sustain findings for plaintiff.

ID.—DISTINCT ELEMENTS—PERSUASION—INSISTENCE ON LEGAL RIGHTS —PERTINACIOUS ZEAL.—Persuasion is not coercion; insistence on one's legal rights is not undue influence; and pertinacious zeal to secure the payment of a just debt is not fraudulent.

ID.—CONSIDERATION FOR NOTE AND MORTGAGE—PAYMENTS UNDER GUARANTY.—*Held,* that the consideration of the note and mortgage was shown by proof that the principal sum thereof was exactly equal to the liability sustained by the maker under her guaranty of advances to be made by plaintiff to a firm of which the comaker was a member, and the amount of which was fully explained to her when the note and mortgage were executed, and the guaranty surrendered to her.

ID.—REQUIREMENTS OF GUARANTY FULLY MET.—Though the guarantor's liability is limited to the terms of the agreement, and sureties are entitled to stand on the precise terms of the bond and are not bound beyond its strict letter, yet this requirement as to the maker's guaranty were fully met by the testimony of witnesses for the plaintiff as to the amount advanced thereunder.

ID.—DELIVERY OF MORTGAGE—EXECUTION—POSSESSION BY PLAINTIFF.— The delivery of the note and mortgage is shown from the proof that they were signed and executed, acknowledged and recorded, and were in the actual possession of the plaintiff and produced in the evidence by him.

ID.—"EXECUTION" INCLUDES "DELIVERY."—The term "executed," as applied to a note and mortgage, has a well-defined meaning and includes delivery.

ID.—PRESUMPTION OF LAWFUL POSSESSION.—The possession of the note and mortgage by the plaintiff raises a presumption that they came into his possession lawfully and would be sufficient to support a finding of delivery.

ID.—JURY TRIAL NOT REQUIRED IN FORECLOSURE SUIT.—An action to foreclose a mortgage is a suit in equity triable by the court, and the defendant was not entitled as of right to demand a trial by jury, notwithstanding a judgment for deficiency may incidentally result from a sale of the mortgaged premises.

ID.—EVIDENCE—COPY OF GUARANTY.—Where the evidence is sufficient to justify the conclusion that the original guaranty was either lost or destroyed, the court properly admitted a copy thereof.

ID.—CROSS-EXAMINATION—MOTIVE AND INTEREST OF WITNESS.—It is proper to show the motive and interest of a witness on cross-examination.

ID.—RULINGS UPON EVIDENCE—ABSENCE OF PREJUDICIAL ERROR.—*Held,* that there were no rulings upon evidence which involved prejudicial error against the appellant.

APPEAL from a judgment of the Superior Court of San Joaquin County.   C. W. Norton, Judge.

The facts are stated in the opinion of the court.

A. H. Carpenter, for Appellant.

Webster & Webster, for Respondent.

BURNETT, J.—The appeal is from a judgment foreclosing a mortgage upon certain real estate belonging to appellant. The nature of the defense is shown by the following averment of the answer: "That neither the note nor the mortgage set forth and described in the plaintiff's said complaint herein were executed by her willingly, freely or voluntarily, and the same are not and never were her obligations; and her signature to each of said documents, if either or both were signed by her, was obtained by fraud, menace and undue influence in the following manner and way." Then follows a description in detail of the transaction relating to the execution of said note and mortgage in which are set forth sufficient facts, if established by the evidence, to defeat the action. Indeed, appellant's story, as told upon the witness-stand, is a pathetic recital of the subjugation of her will and the coercion of her understanding by the importunity, pertinacity and misstatements of the stronger personalities interested in obtaining the security, but the case presents a very different aspect when viewed in the light of the testimony of other witnesses. It is true that extreme anxiety was manifested by plaintiff and considerable explanation and persuasion were necessary to induce appellant to execute said note and mortgage, but in contemplation of the rule as to conflicting testimony and of the discretion as to the weight of evidence granted by the law to the trial court, it cannot be said that there was anything in the conduct of plaintiff which is opposed to good morals, legitimate business methods or any mandate of the statute. This, we think, will appear as we proceed to notice specifically the various contentions of appellant.

1. There can be no controversy as to the principles of law announced by appellant that if the consent of Mrs. Blackburn was not freely or voluntarily given, the note and mortgage were void, even though signed by her (Civ. Code, sec. 1565; *Loaiza* v. *Superior Court*, 85 Cal. 30, [20 Am. St. Rep. 197, 24 Pac. 707]); and if executed, fraud, menace, duress or undue influence would render them void (Civ. Code, sec.

1567; *Morrill* v. *Nightingale*, 93 Cal. 455, [27 Am. St. Rep. 207, 28 Pac. 1068]) ; and consent is deemed to have been obtained through one of these causes when it would not have been given had such cause not existed. (Civ. Code, sec. 1568; *Stockton etc. Works* v. *Glens Falls Ins. Co.*, 98 Cal. 558, [33 Pac. 633].)

But the history of the transaction, as gathered from the testimony of plaintiff's witnesses, shows these facts: On May 29, 1906, appellant guaranteed any indebtedness to accrue after that date from a certain firm of Price & Oldham to the California Electrical Works, a corporation (plaintiff's assignor), to the extent of $1,000. By reason of this guaranty the said corporation furnished said firm with merchandise to the extent of $945. In settlement of this sum the defendants Oldham and Blackburn (the latter as surety) gave their promissory note secured by said mortgage of appellant's property. The $1000 guaranty was then canceled and given to the defendant Blackburn.

As to the immediate circumstances attending the execution of the note and mortgage, the witness Percy Webster testified: "The plaintiff told Mrs. Blackburn that he intended to do what was right; he didn't want anything that did not belong to him, but his company could not afford to lose the money; they looked to him as the man who had let the account be carried, and he wanted to see them whole in the matter, he didn't like to make a woman pay it, particularly if she didn't have much money, but as long as the guaranty was signed by her and Price & Oldham were not good for it, he would have to look to her. As I remember it Mrs. Blackburn then said that she did not think she wanted to pay it; she would want to see somebody; and Mr. Van Valkenburgh said that she could see somebody if she wanted to, but he would not do anything but what was right; all he wanted was his money and no more; and she said that she didn't have any money with which to pay, but she had this property, and it was suggested to her that she could give a mortgage on her property for the payment of it. Mrs. Blackburn asked how that would be done, and then they had some lengthy conversation as I remember it about what to make the terms of the note; they talked it over with Mr. Oldham, and he was told that he really ought to pay it; he said he

felt that too, he didn't want to make her pay it; he didn't
have any property, but he had an interest in the Commer-
cial Credit Company, and he would be willing to turn over
the net profits of that company to the payment of this; and
Mr. Van Valkenburgh I believe made the assertion that that
was not very good security but Mrs. Blackburn's property
would be, and Mr. J. B. Webster suggested that Oldham give
an agreement that he would make the payments and they
figured it out, and he figured that the net proceeds as he
made it would be about $25 a month; he would be willing
to apply those in payment of the note, and then they had
some talk about what interest was to be paid, and Mr. Van
Valkenberg said he would not make that heavy, make it as
light as possible, and called it five per cent, and that was
agreed upon, and Mrs. Blackburn was asked if that would
be satisfactory to her, and she said yes.'' The mortgage
was then prepared but a mistake was made in the description.
The mistake was corrected, after the mortgage had been read
to Mrs. Blackburn and signed by her. After the correction
the instrument was again read to her and ''I asked her if
that was her signature to it; she said yes; I said you then
acknowledge this mortgage with the change? She said she
did; then I made the acknowledgment; I initialed the change
on the mortgage; the note and mortgage were signed at that
time by Mrs. Blackburn, and then this agreement—there was
an agreement made between Mr. Oldham and Mrs. Black-
burn; I wrote it myself; that he would hold her harmless
from the payment of this account; the agreement also as-
signed to her the net proceeds of the Commercial Credit Com-
pany. After this note and mortgage was signed and ex-
ecuted, Mrs. Blackburn made the remark to Mr. Oldham,
'Now, you don't want to let me pay this, you want to see
you keep up the payments.' Oldham said he certainly would,
he would apply the $25 and maybe more, if the business was
good so as to wipe it out as quickly as possible. Mrs. Black-
burn said 'I hope so because I hate to have the neighbors
know I have a plaster on my house.' Before the execution
of the three papers by Mrs. Blackburn, the paper (the guar-
anty) was explained to her, its contents were explained to
her, and after the execution of the three papers and just
before she was leaving she said she ought to have it, and

Mr. Van Valkenburgh said he ought to have it to show his position in the matter, why he was taking the note and mortgage; you said to him she was entitled to it on giving the note and mortgage and she was given the original.'' It is true the witness stated that appellant was agitated and in tears a part of the time but it seemed due to her conviction that she had been robbed by one Price who was formerly a member of the firm of Price & Oldham. The only conclusion to be drawn from the testimony of this witness, as we are required to regard it, is that no misrepresentation was made, no undue influence exerted nor fraud practiced in the transaction, but that the execution of said note and mortgage was the voluntary act of said appellant. The same may be asserted of the testimony of plaintiff, although some isolated sentences give color to appellant's contention that advantage was taken of her necessities. Persuasion is not coercion; insistence upon one's legal rights is not undue influence and pertinacious zeal to secure the payment of a just debt is not fraudulent.

2. It is claimed that another fraud was perpetrated by the insertion in the note and mortgage of $124.99, an indebtedness of Price & Perkins, which, it is asserted, was not included in the guaranty. Reliance is had upon the testimony of plaintiff that everything that was billed prior to June 9th was shipped to Price & Perkins, which amounted to $124.99, and the amount shipped to Price & Oldham was $834.03. Appellant's obligation was expressed as follows: ''In consideration of one dollar paid to me by the California Electrical Works and the extension by such company of credit on account from time to time to Price and Oldham which I hereby request, I guarantee the payment of all balances on account and all notes given by them for or on account of such balances up to the sum of one thousand dollars as the same shall become due and payable by them to such company. . . . All bills shall become due the 15th of the month following their dates.'' The effect of appellant's contention would be to reduce the amount of the principal of the note and mortgage to the extent of said $124.99, but we are required to reject this view since plaintiff testified that ''During the latter part of May Price came to my office and asked to open an account with them, which I told him we could

not do unless he could give us a guaranty. He asked me to open the account in the name of Price & Perkins, and sent a guaranty some few days later in the name of Price & Oldham. In the meantime before he had sent us a guaranty he had sent us a number of orders covering material which he asked us to ship and these orders were headed Price & Perkins. He asked us to ship them, but we held them awaiting this guaranty. When the guaranty came we shipped a certain part of those orders and our billing department and shipping department headed our shipping tags Price & Perkins. The shipments were made to Price and Perkins and were taken out by Price and Oldham, Price and Perkins having gone out of business in the meantime and Price and Oldham succeeding them. All of the material, however, that is charged in either one of those accounts was received by Price & Oldham, and none of the material by Price and Perkins, because we have never made a shipment upon open account to Price and Perkins.'' Turning to the Price and Perkins account, we find that every item on the debit side, which was charged against appellant, became due after May 29th, the date of the execution of said guaranty. There is evidence, also, that the whole matter was explained to appellant before she executed said note and mortgage. There seems, therefore, no question as to the consideration for the said note and mortgage.

3. There is apparently no merit in the contention that the guaranty was fraudulently dated. It is based upon the testimony of one R. B. Green who declared that he was in Stockton when the guaranty was executed and was in Ashland or Grant's Pass, Oregon, on May 29th, the date the instrument bears, and did not return till June 4th, but he further testified: ''I didn't witness the document, but I heard it spoken of, and it was anywhere from the 9th or 10th up to the 15th of June, 1906.'' His testimony in reference to the date of the execution of said instrument was very properly stricken out as hearsay. It is undoubtedly true that the guarantor's liability is limited to the terms of the agreement (*Glassell* v. *Coleman*, 94 Cal. 260, [29 Pac. 508]); and sureties are entitled to stand on the precise terms of the bond and are not bound beyond its strict letter (*Cadenasso* v. *Antonelle*, 127 Cal. 382, [58 Pac. 765]); but these re-

quirements are met by the testimony of the witnesses for the plaintiff and the said amount of $945 is thereby brought within the operation of said guaranty.

4. Another point made is that the mortgage is void for want of delivery. Appellant asserts that "Mrs. Blackburn testified that she had no recollection of signing the note and mortgage on her home, and she asserted positively under oath that she never delivered either of those two alleged documents to the plaintiff or to any other person for him and her evidence is undisputed." As to this it may be said that the court was entirely justified in concluding from all the testimony of appellant that she was mistaken in the foregoing declaration. Besides, while no witness stated that the note and mortgage were "delivered," it is impossible to give full credit to the testimony of plaintiff's witnesses without reaching the conclusion that everything was done which is necessary to make said instruments effective. There is, moreover, the positive assertion of the said witness Webster that "this note and mortgage was signed and *executed.*" The term *executed* as applied to such instruments has a well-defined meaning and includes delivery. (Code Civ. Proc., sec. 1933; *Clark* v. *Child,* 66 Cal. 87, [4 Pac. 1058]; *Nicholson* v. *Combs,* 90 Ind. 515, [46 Am. Rep. 229].) Again, the same witness testified that he told appellant of having had the mortgage recorded and the instruments were actually in possession of plaintiff at the time of the trial and were introduced in evidence by him. The presumption that they came into his possession lawfully would be sufficient to support a finding of delivery.

5. Appellant complains because the court denied her request for a jury trial. A sufficient answer is found in the decision of the supreme court in *Downing* v. *Le Du,* 82 Cal. 473, [23 Pac. 202], wherein is quoted with approval the following from *Carroll* v. *Daniel,* 95 N. Y. 254: "This is an action for the foreclosure of two mortgages on real estate, and was triable by the court. The defendant was not entitled as matter of right to a trial by jury. Although a sale of the mortgaged premises might result in a deficiency for which a money judgment could be docketed against the defendant liable for such deficiency, such a judgment was not the sole object of the action, but was an incident of the equitable

relief sought.  It might not even become necessary, as the mortgaged premises might bring a sufficient sum to pay the mortgaged debt and the circumstance, that in the contingency of the premises proving insufficient, a judgment for the deficiency might result, did not entitle the defendant to a jury trial.''

6. Certain rulings of the court during the trial of the action are assailed as prejudicially erroneous.  Some of them are so manifestly correct that we deem it unnecessary to notice them specifically.

A copy of the said guaranty was received in evidence.  Assuming that the circumstance is important, there was a sufficient foundation laid for its introduction, as appears from the testimony of the said Webster and of appellant.  The former said that Mrs. Blackburn declared she ought to have the paper and the plaintiff desired to retain it to show his position in the matter and ''so a copy was made and he indorsed on the original—made a certain indorsement on the original and a copy of it was also made and she was then given the original; I have an exact copy of it.''  Mrs. Blackburn testified: ''If it was ever given to me I lost it.''  She added that she never had it.  Be that as it may, the showing was sufficient to justify the conclusion that the original was either lost or destroyed and therefore the copy was admissible.  (Code Civ. Proc., sec. 1855.)

The court sustained an objection to the following question asked of the witness Webster: ''And you expected to get a pretty good fee, did you not, if you could make this collection against Price & Oldham?''  The objection probably should have been overruled, as it is proper to show motive and interest on cross-examination.  (Code Civ. Proc., sec. 1847; *People* v. *Thompson,* 92 Cal. 506, [28 Pac. 589].)  But the ruling was entirely without prejudice, as the witness had already testified that the matter had been placed in the hands of himself and father for collection and the court had the right to assume that they were to be compensated for their services.  Besides, they were attorneys of record for the plaintiff and they had asked in the complaint for an attorneys' fee of $100.  Appellant had the benefit, therefore, of whatever unfavorable inference might be drawn from the fact that the witness was interested in the result of the trial.

The plaintiff, in giving his account of the transaction with appellant, was proceeding to state that he said to her, "and that it was not the practice of my company." It was objected to on the ground that it was "incompetent, irrelevant, immaterial, hearsay and self-serving." The objection was overruled, but whether correctly or not is immaterial, as the witness proceeded no further with the "practice."

The ruling of the court was harmless on the question asked of plaintiff: "Do you remember when you first shipped electrical goods here to Stockton to Price or to any firm of which he was a member?" as it was subsequently answered. The same may be said of some other assignments of error.

As to certain questions asked of appellant after she was recalled and to which an objection was sustained, it may be said that, as far as material, they had all been previously answered by her.

In conclusion, the observation may be indulged that appellant makes the very common mistake of emphasizing the testimony favorable to her theory and assuming that this court will hold that it must be believed in opposition to the testimony sustaining the contention of respondent. It is needless to say that however much we may deplore the misfortunes of appellant, as the evidence is substantially conflicting upon all material points we cannot enter upon an inquiry as to the relative weight of the evidence and the credibility of the witnesses.

The judgment is affirmed.

Hart, J., and Chipman, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 9, 1910, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 7, 1910.