[S. F. No. 9693. In Bank.—May 29, 1922.]

## JENNIE E. WEAKLEY, Respondent, v. GEORGE L. MELTON, Appellant.

[1] GIFT—TRANSFER OF MONEY BY SON TO MOTHER — SUFFICIENCY OF EVIDENCE.—In this action to secure the cancellation of a deed of trust executed by the plaintiff to her son in reference to a sum of money which the latter had transferred to her several years prior to such declaration, the finding that the amount was turned over absolutely free from any condition, limitation, or trust, and not given in trust to her during her lifetime, as contended by the defendant, is sufficiently supported by the plaintiff's testimony.

[2] TRUST—ACTION TO SET ASIDE DECLARATION—UNDUE INFLUENCE— SUFFICIENCY OF EVIDENCE. — The finding in such action that the declaration of trust was executed while plaintiff was in an extremely agitated and nervous condition and through the exercise of undue influence by defendant is warranted by the evidence.

[3] ID.—UNCONDITIONAL GIFT OF SON TO MOTHER—SUBSEQUENT PROCUREMENT OF DECLARATION OF TRUST — UNWARRANTED ACTION. — Where a son made an unconditional gift of money to his mother, the obtaining of a declaration of a trust from her thereafter in reference to the money cannot be justified as the exercise of a legal right.

APPEAL from a judgment of the Superior Court of Santa Cruz County. Benj. K. Knight, Judge. Affirmed.

The facts are stated in the opinion of the court.

Lucas F. Smith, Lucas F. Smith, Jr., and Stanford F. Smith for Appellant.

A. W. Hare and Netherton & Johnston for Respondent.

LAWLOR, J.—Plaintiff, Jennie E. Weakley, brought this action to have declared null and void a declaration of trust of real property located in the city of Santa Cruz in favor of defendant, George L. Melton, and to have the record thereof canceled; to have her title to said property

2. Mistake, fraud, undue influence, etc., as a ground for relief from a voluntary trust, notes, Ann. Cas. 1918C, 836; 19 L. R. A. 767.

quieted as against defendant, and to recover two thousand nine hundred dollars alleged to be due to plaintiff on a promissory note executed in her favor by defendant, together with costs. Judgment was entered in favor of plaintiff granting all the relief prayed, and from that judgment defendant takes this appeal.

Respondent, a woman of advanced years, and appellant are mother and son. Respondent's first husband, appellant's father, died when the latter was about three years old. Thereafter respondent remarried and a daughter, now Mrs. A. L. Munger, was born of the second marriage. Respondent worked and supported appellant until he was about fifteen years of age. At that time he inherited between twenty thousand dollars and thirty thousand dollars from the estate of a paternal uncle. Respondent was appointed guardian of appellant's person and estate, in which capacity she acted until he came of age in 1892. After appellant attained his majority, he transferred to respondent the sum of nine thousand dollars, she claiming that it was a gift and he asserting it was given in trust during her lifetime. This money she dealt with in her own name, but she always kept it separate from her second husband's property. On one occasion in 1896 appellant said to her: "Dr. Workman told me I ought to have some writing to show I get this money after you are done with it. But I am not going to ask it of you."

In 1910 appellant wrote to respondent, explaining that he intended her to have the use of the money only during her life and that upon her death, the money, or the property in which it had been invested, should revert to him. On September 5, 1911, appellant visited respondent at her home in Santa Cruz, which home consisted of a house and lot which respondent had purchased out of the nine thousand dollars she received from appellant. At that time respondent executed the following declaration of trust in appellant's favor of the property constituting her home:

"Whereas, my son, George L. Melton, on or about the 6th day of April, 1892, did convey to me the sum of nine thousand dollars ($9,000) to be held by me during the term of my natural life in trust for him, his heirs or assigns, this is to certify that said money is now invested as follows: [Her home described by street number, and a

loan of three thousand eight hundred dollars to A. L. Munger]. Witnesseth: That said real estate with all and singular the rents, tenements, and hereditaments thereunto appertaining and said loan, together with accretions and interest due thereon and property or properties derived from said real estate or loan shall at the expiration of said trust be immediately placed in possession of said George L. Melton.''

This declaration of trust appellant caused to be recorded, and is the one respondent seeks to have declared null and void by this action, on the ground it was obtained by undue influence. Appellant told respondent he desired the declaration of trust because he feared respondent's daughter, Mrs. A. L. Munger, would eventually receive part of the property covered by it.

According to the evidence, respondent became so nervous and distressed over having given appellant the declaration of trust that she began to break down physically. As a result, her son-in-law, A. L. Munger, endeavored to secure the cancellation of the declaration of trust. At that time Munger owed respondent two thousand nine hundred dollars of the three thousand eight hundred dollars he had borrowed from her. He and appellant, who was at that time short of money, agreed that the two thousand nine hundred dollars should be paid to appellant through a bank in Fresno—he to assume the debt to respondent—and, according to Munger, that a cancellation of the declaration of trust should be delivered through the same bank upon the making of the payment. The money was accordingly paid and the following document deposited with the bank: ''At the request of Jennie E. Weakley and for the sole purpose of enabling her to better enjoy the life interest in the property transferred to her as a life estate, I hereby surrender and authorize the cancellation on record of the acknowledgment of trust executed by Jennie E. Weakley on September 6, 1911, and recorded on that day in Vol. 6 of Miscellaneous, page 247, Santa Cruz (California) County Records.''

Appellant on November 14, 1913, gave respondent his note for the two thousand nine hundred dollars loaned to him, upon which one cause of action in this suit is based. He regularly paid the interest on this note until November

14, 1916. Respondent was dissatisfied with the purported cancellation of the declaration of trust, so a proposed agreement, dated June 1, 1919, was drawn up between appellant, respondent, A. L. Munger, and his wife, looking to the settlement of the entire matter. By its terms respondent was to convey to appellant the property covered by the declaration of trust, and surrender as paid the note of November 14, 1913. Appellant was to pay respondent the interest due on the note, and an allowance for her support of twenty-five dollars a month. The Mungers were to make her a like allowance. This attempt to adjust the matter failed and respondent refused to enter into the proposed agreement.

Respondent then began this action to secure the cancellation of the declaration of trust, alleging in effect that appellant acted fraudulently in giving to respondent the authorization to cancel of record instead of surrendering the declaration of trust. The note was set out *in haec verba*. Appellant in his answer alleged that the nine thousand dollars was given to respondent as a life estate only, the residue to revert to him on her death; denied that the declaration of trust was given under undue influence or that he acted fraudulently or deceived her in giving the authorization to cancel of record. Appellant further alleged that the two thousand nine hundred dollars was a part of the nine thousand dollar life estate; that he was only to pay interest at the rate of eight per cent per annum and not the principal, and that on respondent's death the note was to be surrendered to him. The court found that "After defendant arrived at the age of majority and after the accounts of the guardian had been settled, he made a gift to his mother of nine thousand dollars. This gift was made by defendant to plaintiff as an outright gift and without reservation, exception or limitation, and was accepted by plaintiff as such"; that "defendant secured the execution of said document [the declaration of trust] by said plaintiff while said plaintiff was in an extremely agitated and nervous condition, and through the exercise by defendant of undue influence upon said plaintiff"; that "prior to the said delivery to the said Munger, as agent for plaintiff, of said purported cancellation of declaration of trust, it was understood and agreed between plaintiff and de-

fendant that said instrument of trust should be thereby
wholly canceled and that the cancellation received by her
was intended to accomplish that end.'' Appellant contends
the evidence is insufficient to support these findings. It
was also found that no part of the principal or interest
of the note was paid; that the matters in dispute were
never settled or compromised; and that the purported
agreement of settlement was never signed by anyone but
appellant.

[1] 1. Appellant first asserts that ''plaintiff's testimony,
fairly and reasonably considered, goes only to the extent
that the gift of this property and money to her by the
defendant was for her support and maintenance, with the
right to consume the principal if that should be necessary,
and that whatever remained over upon her death should be-
long to defendant.'' We are of the opinion this position
cannot be maintained. Respondent on direct examination
testified as follows: ''Q. Then when, Mrs. Weakley, did you
receive the money from the defendant which you have
since claimed as your own? A. Well, I received it after
he was of age, but we had talked it over, and he had
promised to give it to me even before that, but I didn't ask
it of him until he was of age. . . . But I told him if his
father had lived until Uncle Amon had passed away I
would have been entitled to half of it and he to half, and
I said, 'If you will give me a third, because there is enough
for both of us' . . . and he willingly said he was willing
for me to have half, but I didn't ask it and didn't accept
it. . . . Q. Now what was the substance of the conversation
as near as you can recollect that occurred when this nine
thousand dollars was turned over to you, delivered to you?
In other words, what were the conditions imposed, if there
were any conditions. A. . . . We never to my knowledge
had one minute of controversy over this property, and
he was willing and saw the justice of my having a share
of it. We didn't call it a gift, and I didn't demand it,
but I did ask it of him as a moral right. . . . Q. As I
understand it, there was a conversation between yourself
and your son in reference to the amount of money he had
received from the different sources, and as I understand,
you related to him at that time in reference to your care
of him and what you thought you should have, and then

the nine thousand dollars was delivered to you. Now, were there any specific conditions imposed upon the gift of the nine thousand dollars? A. No, not any, but after— I remember after I had it I told him I would be careful of it and I would return what was left, what I didn't use, and I always kept it separate from Mr. Weakley's property, because I wanted George to .inherit what was left of the nine thousand dollars. Q. You say that was after you received it? A. That was after I received it."

This testimony is clearly sufficient to support the finding that at the time it was turned over to her, the sum of nine thousand dollars was given absolutely to respondent, free from any condition, limitation, or trust. Respondent stated there were no conditions attached to the gift, but that after it was made, she said she would return what was left, because she always wanted appellant to "inherit" what was left. It is not claimed that this promise to give appellant what was left created any trust in his favor. While in certain letters he had written he maintained that the money was held by respondent in trust for him and he testified it was "to be used by her, as we expressed it, during her lifetime, and to be returned to me undiminished at the time of her death," respondent stated "it is not true, not one word of it. It is awful to sit here and deny my son's word, but he has not stated the facts correctly." The evidence on this issue is involved in sharp conflict and since respondent's testimony alone is sufficient, we are bound by the findings that the money was given to her unconditionally.

[2] 2. It is next claimed the evidence is insufficient to sustain the finding that the declaration of trust was executed while respondent was in an extremely agitated and nervous condition and through the exercise of undue influence by appellant. It is provided in section 1575 of the Civil Code that "Undue influence consists:

"1. In the use, by one in whom confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him;

"2. In taking an unfair advantage of another's weakness of mind; or,

"3. In taking a grossly oppressive and unfair advantage of another's necessities or distress."

In *Soberanes* v. *Soberanes,* 97 Cal. 140 [31 Pac. 910], a mother made a gift of certain real property to her son. In discussing the claim that he obtained the property through undue influence, the court said: "Some of the cases hold that undue influence is not to be inferred from the relation of parent and child (*Millican* v. *Millican,* 24 Tex. 446); but where the parent is of great age, or is enfeebled by disease, and conveys his entire estate to one child, to the exclusion of other children dependent upon his bounty, the burden is unquestionably upon the donee to show that the gift was made freely and voluntarily, with full knowledge of all the facts, and with perfect understanding of the effect of the transfer. (*Todd* v. *Grove,* 33 Md. 194; *Highberger* v. *Stiffler,* 21 Md. 352, 83 Am. Dec. 593.)"

Respondent testified that appellant came to her home on the evening of September 5, 1911, and that he brought up the subject of the declaration of trust at that time. On direct examination she stated that "he commenced and told me how much he had always done for me, and how he considered it was his, and I just sat there and didn't make any reply, but his plea was he wanted to keep my daughter from getting a share of it, and my argument was they didn't want it and didn't expect it." She further testified that she was so wrought up and nervous over the incident she did not sleep that night; that the next morning she asked appellant, "Who has put you up to this?" that he said, "Not anybody"; that she was worried and cried; that she understood they were to draw up an agreement; but that while they were waiting for the car appellant took an agreement, already drawn up, from his pocket. That agreement was the declaration of trust which respondent later signed. She stated that he read the agreement over to her, but that as she was hard of hearing she did not hear half that he said, and that as she did not have her glasses she could not read it; that "I kept asking him not to ask me to sign it, and I asked him that at home in the kitchen. I said, 'Don't ask me to sign this, George, it is going to ruin my life, I will never care for the home if there is a cloud on the title,' and he said I would have all the privileges I ever had, 'The money is yours while I live,'

. . . and I went and signed it, but I didn't know what I was signing." On cross-examination she said, "I don't remember anything that happened going down town, but I remember I was awfully excited and nervous. . . . I remember of George—I drew back a little bit, and I don't know that I told him I didn't want to sign it, but I drew back, and he patted me on the shoulder and he says, 'It is all right, Mother, it is just to keep Pearl from making any trouble or getting it after you are through with it.'"

In view of the authorities cited and this evidence, we cannot hold that the finding of undue influence was not warranted. Appellant cites *Van Valkenburgh* v. *Oldham*, 12 Cal. App. 572, 577 [108 Pac. 42, 44], to the proposition that "Persuasion is not coercion; insistence upon one's legal rights is not undue influence and pertinacious zeal to secure the payment of a just debt is not fraudulent." [3] But we have shown appellant had no claim to the property—that it was given to respondent free from any condition—and his obtaining of the deed of trust cannot therefore be justified as the exercise of a legal right.

3. Appellant makes the further contention that the evidence is insufficient to support the finding that he "fraudulently procured said sum of two thousand nine hundred dollars from said plaintiff and gave said plaintiff his promissory note therefor . . . and induced plaintiff to believe she was to receive a complete cancellation in consideration thereof." He insists he "consistently refused to renounce his claim to the remainder over of the fund after plaintiff's death, but he yielded to the importunities of plaintiff and agreed to clear the record title of the Santa Cruz residence and for this purpose executed the informal release" of October 7, 1913. It is unnecessary to consider this contention, for respondent's claim to a cancellation of the declaration of trust is based upon the claim of undue influence exerted to induce her to sign it. Inasmuch as the findings support the judgment, and respondent's right to cancellation dates back to the execution of the declaration of trust, the finding as to the fraudulent securing of the loan is immaterial and the point is without merit. Aside from the claim that all of the property is held in trust for him, he does not dispute the finding that the two thousand nine hundred dollars is owing to respondent.

4. Appellant contends the court erred in not admitting in evidence the proposed agreement of June 1, 1919, by which the controversy was to be settled, and which, it is asserted, would constitute a complete defense to this action. It is claimed this agreement went into effect notwithstanding it was not signed by respondent because it had been assented to by her attorney. But as we have shown, the court found against the execution of the agreement and this finding is not attacked. This being the case, it was not binding on any of the parties, and was at most an accord without satisfaction. As such, it would not constitute a defense to the action. (*Silvers* v. *Grossman*, 183 Cal. 696 [192 Pac. 534].) There was no error in excluding the evidence.

The judgment is affirmed.

Wilbur, J., Sloane, J., Lennon, J., Richards, J., *pro tem.*, Shurtleff, J., and Shaw, C. J., concurred.