[Civ. No. 3191.  Third Appellate District.—May 12, 1927.]

ADA M. HINKEL, as Executrix, etc., Respondent, v. E. A. CROWSON, etc., et al., Appellants.

[1] PLEADING—CHARACTER OF ACTION—TITLE OF COMPLAINT.—It is not what a complaint is called that determines the character of an action, but the allegations thereof.

[2] ESTATES OF DECEASED PERSONS—PURCHASE OF LOT BY DECEDENT—PROMISSORY NOTE — VENDOR'S LIEN — HOMESTEAD — JUDGMENT — PLEADING.—In an action to recover the amount due under a promissory note given by a deceased person in her lifetime for the purchase price of a lot bought from the plaintiff, and to enforce a vendor's lien, after presentation of a claim against the estate of said decedent, a homestead having been declared on said lot by said decedent in her lifetime, the trial court had jurisdiction, under section 1475 of the Code of Civil Procedure, to render a judgment directing the payment thereof first out of the available funds of the estate and any remaining deficiency by enforcemen; of the vendor's lien against the lot in question, where the complaint, although praying first for the enforcement of the vendor's lien and then for the payment of any deficiency out of the funds of the estate, also prayed "for such other, further or different relief as to the court may seem meet and proper."

[3] ID.—EXISTENCE OF HOMESTEAD—PLEADING.—In such action, the defect in the complaint consisting of the failure to allege the ex-

---

2.  See 14 Cal. Jur. 988.
3.  See 21 Cal. Jur. 277.

istence of a homestead was cured by the answer which fully alleged the existence of such homestead.

[4] ID.—CLAIMS—PURPOSE OF PRESENTING.—The purpose of presenting a claim against an estate is to advise the representative of the estate of its nature, and there is no requirement that it shall state the facts with all the detail necessary in a complaint nor is its sufficiency to be tested by the rules of pleading.

[5] ID.—AGREEMENT BY VENDEE TO GIVE SECURITY—VENDOR'S LIEN.—Where the vendee has agreed to give but has not given security for the purchase price of real property, the price remains unsecured otherwise than by the personal obligation of the buyer, and the seller of the property has a vendor's lien thereon for the price thereof.

[6] ID.—DELIVERY OF NOTE—EVIDENCE.—In such action, the placing, by some person, of the promissory note, signed by the decedent, in the plaintiff's desk and the fact that the decedent thereafter made seventeen monthly payments in accordance with the terms of the instrument warrant the inference that the decedent intentionally delivered the note into the possession of the plaintiff, even though it was not delivered to him personally by her; and it was sufficient if she delivered it to some person for him and that such person placed it among plaintiff's papers in his desk.

[7] ID.—FINDING OF DELIVERY OF NOTE—SUFFICIENCY OF.—In such action, the finding that the allegation of the complaint that the promissory note was executed by decedent to plaintiff was true was a sufficient finding of delivery of the note, as the term "executed" includes delivery.

[8] ID.—INSTALLMENTS OF NOTE DUE AFTER DECEDENT'S DEATH—APPOINTMENT OF ADMINISTRATOR—STATUTE OF LIMITATIONS.—In such action, the statute of limitations did not begin to run against installments of the note falling due after the death of the decedent until an administrator was appointed.

[9] ID.—CAUSE OF ACTION AGAINST ESTATE—DUTY TO CAUSE ADMINISTRATION.—A party having a cause of action against the

4. Necessity for following rules of pleading in statement of claim, note, 130 Am. St. Rep. 311. See, also, 11 Cal. Jur. 700; 11 R. C. L. 194.

5. Waiver of vendor's lien by taking personal security of purchaser, note, 137 Am. St. Rep. 200. See, also, 25 Cal. Jur. 752; 27 R. C. L. 576.

6. See 3 R. C. L. 860.

7. See 1 Cal. Jur. 232; 6 Cal. Jur. 228; 9 Cal. Jur. 105.

8. See 11 Cal. Jur. 1148; 16 Cal. Jur. 562.

9. See 11 Cal. Jur. 1146.

estate of a deceased person is not bound to cause administration to be had.

[10] ID.—DEFAULT IN NOTE—ELECTION—WAIVER—STATUTE OF LIMITA-TIONS.—Notwithstanding an election by the plaintiff to declare the entire note due and payable because of default in payments, it was still within the power of the plaintiff to waive the default, and, as against a subsequent action, the statute of limitations ran only from the maturity of installments as they fell due.

[11] ID.—HOMESTEAD—ADVERSE POSSESSION—VENDOR'S LIEN.—In such action, decedent's husband, who had the lot in question set apart to him as the surviving husband under section 1723 of the Code of Civil Procedure, and who was in possession of the property at all times since and paid all taxes thereon, did not acquire title, as against plaintiff, by adverse possession, as under section 1241 of the Civil Code the homestead was subject to execution or forced sale in satisfaction of judgments obtained on debts secured by vendor's lien upon the premises.

[12] ID.—WAIVER AGAINST OTHER ESTATE PROPERTY IN FORMER ACTION —DISMISSAL—ESTOPPEL—ABSENCE OF PREJUDICE.—In such action, an estoppel against said plaintiff to recover any sum out of the funds of the estate, based on an alleged waiver of all recourse against other property of the estate than the lot in question made in a former action, which was dismissed, cannot be claimed where the defendants did not act to their prejudice in any manner by reason of the alleged waiver.

[13] ID.—MISTAKEN REMEDY—ESTOPPEL.—If a plaintiff is mistaken and undertakes to avail himself of a remedy to which he is not entitled, he is not prevented from subsequently availing himself of the one to which he is entitled under the facts of the case; and the defendant is placed in no worse position by reason of the unsuccessful prosecution of the action and there is consequently no estoppel.

[14] ID.—GIFT OF LOT—FINDING—EVIDENCE.—In such action, the evidence was sufficient to justify the finding that the property in question was not given to plaintiff's son or to his son's wife (the maker of the promissory note sued upon), but that the conveyance to the latter was made pursuant to a sale thereof to her by the plaintiff.

---

10. See 16 Cal. Jur. 518.

12. See 10 Cal. Jur. 611.

13. Pursuit of mistaken remedy as election, note, 5 Ann. Cas. 962. See, also, 10 Cal. Jur. 5; 9 R. C. L. 963. Effect of choosing, by mistake, remedy not legally available, notes, 8 L. R. A. (N. S.) 144; 22 L. R. A. (N. S.) 1153. See, also, 9 R. C. L. 963.

[15] ID.—CLAIMS—STATUTE OF LIMITATIONS.—The limitation prescribed by section 1498 has no application to the instant action, where the claim upon which the suit is based was neither allowed nor expressly rejected by the administrator and no notice of rejection of the claim was served upon the plaintiff, and plaintiff elected under section 1496 of the Code of Civil Procedure to treat the failure of the administrator to allow the claim as a rejection thereof.

[16] ID.—SALE OF PROPERTY AFTER DEFICIENCY OF ESTATE FUNDS—PROPRIETY OF JUDGMENT.—In such action, it was not error for the trial court to render a judgment directing a sale of the property in the event of a deficiency, after applying available funds of the estate toward the satisfaction of the judgment.

(1) 31 Cyc., p. 94, n. 7. (2) 31 Cyc., p. 111, n. 1. (3) 24 C. J., p. 350, n. 83; 31 Cyc., p. 715, n. 57. (4) 24 C. J., p. 349, n. 82. (5) 39 Cyc., p. 1835, n. 19. (6) 8 C. J., p. 209, n. 43. (7) 23 C. J., p. 278, n. 56. (8) 24 C. J., p. 784, n. 28. (9) 23 C. J., p. 1003, n. 77. (10) 37 C. J., p. 855, n. 87. (11) 2 C. J., p. 276, n. 59. (12) 20 C. J., p. 37, n. 44. (14) 28 C. J., p. 680, n. 70. (15) 24 C. J., p. 782, n. 87. (16) 24 C. J., p. 877, n. 61.

APPEAL from a judgment of the Superior Court of Alameda County. Dudley Kinsell, Judge. Affirmed.

The facts are stated in the opinion of the court.

James F. Sheehan and Charles J. Heggerty for Appellants.

Richard B. Bell and R. M. F. Soto for Respondent.

FINCH, P. J.—Respondent, Ada M. Hinkel, as executrix, has been substituted for John M. Hinkel, the original plaintiff herein. The latter will be referred to as the plaintiff. The complaint alleges that the plaintiff sold and conveyed a certain lot to Florence G. Hinkel November 27, 1914, for the agreed price of $4,000; that she gave the plaintiff her promissory note, payable in monthly installments of $30 each, for the full purchase price; that although the note recites that it is secured by a mortgage it is not so secured; that thereafter she and defendant Crowson intermarried; that she died in October, 1916; that she paid a total of $510

on the note and that no other payments have been made thereon; that Crowson was appointed administrator of her estate January 3, 1921; that on April 28, 1921, plaintiff filed his claim against said estate for the balance due upon the note, but that the administrator failed to allow the same; and that in said claim plaintiff asserted a vendor's lien upon the lot for the amount due upon the note. The prayer of the complaint is for judgment that there is due upon the note $5,028.93, with interest thereon from April 4, 1921; that the plaintiff has a vendor's lien therefor upon the lot; that the lot be sold and the proceeds be applied in satisfaction of the judgment; that if there be a deficiency, "judgment for such deficiency be entered and docketed against said E. A. Crowson, as administrator of said estate, to be paid in due course of administration"; and "for such other, further or different relief as to the court may seem meet and proper." The aforesaid claim set out the note, and alleged that it was not secured by a mortgage or otherwise secured, "save and except the equitable right to a vendor's lien" upon the lot; that "said vendor's lien has been established by judgment and decree, now in full force and effect, but pending on appeal; . . . that in presenting this claim the plaintiff does not in any manner waive, or intend to waive, or relinquish or abandon his right to a vendor's lien as claimed by him in said action and as established by said judgment and decree, but insists on said lien; and that this claim is presented solely with the intention that the personal obligation against the decedent may be established and if there is any deficiency left after said real property shall have been sold under the said judgment and decree such deficiency may be paid in due course of administration out of the estate of said decedent." The answer is too long to be set out even in substance. Such parts thereof as are material to the questions presented by appellant will be stated in connection with the discussion of such questions.

The court found the allegations of the complaint to be true; that Florence G. Hinkel and defendant Crowson intermarried November 30, 1914, and thereafter the former filed a declaration of homestead on the lot; that all unpaid installments of said promissory note which became due prior to the death of Florence G. Crowson are barred by the statute of limitations but that the installments which became due

after her death "are not barred by any statute of limitations."

The decree adjudges that there is due plaintiff on the promissory note the sum of $6,503.60; that he has a vendor's lien on said lot for that sum; that the plaintiff "is entitled to have paid in due course of administration upon the amount of the judgment, the whole thereof, or so much thereof as may be available therefor, out of and from the funds of the estate"; that defendant Crowson, as administrator, "is hereby ordered, adjudged and directed to pay in due course of administration to the plaintiff out of the funds of the estate of said decedent the amount of said judgment, or such portion thereof as the said funds may be available for said purpose"; and that the vendor's lien be enforced against said lot for any deficiency remaining after the available funds of the estate shall have been applied in payment of the judgment. The defendant Crowson, individually and as administrator, has appealed from the judgment.

The judgment referred to in the claim against the estate of decedent was rendered in an action brought by the plaintiff herein against Crowson individually, as sole defendant, to foreclose the alleged vendor's lien involved in this action. The judgment was reversed on the ground that the plaintiff had not presented his claim to the administrator of the estate for allowance. (*Hinkel* v. *Crowson,* 188 Cal. 378 [206 Pac. 58].) This action was thereafter commenced and during the trial thereof the former action was dismissed.

[1] The complaint is entitled, "Complaint to Establish and Foreclose a Vendor's Lien," but it is not what the complaint is called that determines the character of the action, but the allegations thereof. [2] The prayer is, among other things, for a sale of the lot in question and the application of the proceeds toward the discharge of the lien and judgment for the deficiency, if any, payable in due course of administration. A judgment to that effect would be in violation of the terms of section 1475 of the Code of Civil Procedure, which, in case of a claim against an estate secured by a lien on the homestead selected and recorded prior to the death of the decedent, provides: "If the funds of the estate be adequate to pay all claims against the estate, the claims so secured must be paid out of such funds. If

the funds of the estate be not sufficient for that purpose, the claims so secured shall be paid proportionately with other claims allowed, and the liens or incumbrances on the homestead shall only be enforced against the homestead for any deficiency remaining after such payment." But the plaintiff also prayed "for such other, further or different relief as to the court may seem meet and proper," and the judgment rendered by the court is in accordance with the provisions of section 1475. The court had jurisdiction to grant "any relief consistent with the case made by the complaint and embraced within the issue." (Code Civ. Proc., sec. 580.) [3] The existence of the homestead is not alleged in the complaint, but it is fully alleged in the answer. This allegation in the answer cures the defect in the complaint. (21 Cal. Jur. 277.) In his claim against the estate, the plaintiff fell into the same error, as he did in his complaint, of assuming that he was entitled to enforce his lien on the lot before resorting to the other property of the estate. The claim, however, states all the facts necessary to justify its allowance and that it is presented "with the intention that the personal obligation against the decedent may be established." [4] "The purpose of presenting such a demand is to advise the representative of the estate of its nature, and there is no requirement that it shall state the facts with all the detail necessary in a complaint nor is its sufficiency to be tested by the rules of pleading." (*Doolittle* v. *McConnell,* 178 Cal. 697, 705 [174 Pac. 305, 308].)

[5] The note recites: "This note is secured by a mortgage bearing even date herewith." The complaint alleges, however, and the plaintiff testified that the note was not secured. The plaintiff testified that the decedent agreed to secure the note by a trust deed, but that no such deed was ever executed. It has been held that a seller of real property waives his vendor's lien thereon for the selling price thereof by accepting security for the amount thereof. (*Jones* v. *Allert,* 161 Cal. 234, 237 [118 Pac. 794].) No case has been found, however, which holds that an unexecuted agreement to accept such security destroys the vendor's lien. Where the vendee has agreed to give but has not given security for the purchase price of real property, the price "remains . . . unsecured otherwise than by the per-

sonal obligation of the buyer," and the seller of the "property has a vendor's lien thereon" for the price thereof. (Civ. Code, sec. 3046.)

[6] The appellant contends that the promissory note was never delivered. The note is dated November 27, 1914. Plaintiff testified that he left his home in Alameda County for Chicago November 29, 1914; that he did not have the note at that time; that he returned home about six weeks later; that on his return home he found the promissory note among his papers in his desk in his home; that he never knew how the note got there; that the signature to the note is in the handwriting of the decedent, and that the decedent made seventeen monthly payments on the note of $30 each. In answer to a question on cross-examination as to why he did not get the note before delivering the deed to decedent, the plaintiff replied: "I had to go to Chicago on only one day's notice, and then I left it all to Rena to fix this thing, and he fixed it." Rena Haunt testified: "At the time I was chauffeur for Mr. Hinkel. One day he gave me instructions to take some papers to Mrs. Florence Hinkel. . . . I took those papers to Mrs. Florence Hinkel, as Mr. Hinkel told me to do. . . . I don't know exactly what they was. There was two or three papers together, in regard to the sale of a house where she was living. . . . I gave them to Mrs. Florence Hinkel. . . . I never saw them again. I was supposed to go and get them back about a week after, but I never did. . . . I told her that she have those signed and recorded and send them back to Mr. Hinkel. . . . I got them (the papers) on the morning before Mr. Hinkel left for Chicago, a day or two before. . . . I know that those papers were in regard to the sale of the house." The placing, by some person, of the promissory note, signed by the decedent, in the plaintiff's desk and the fact that the decedent thereafter made seventeen monthly payments in accordance with the terms of the instrument warrant the inference that the decedent intentionally delivered the note into the possession of the plaintiff, even though it was not delivered to him personally by her. It was sufficient if she delivered it to some person for him and that such person placed it among plaintiff's papers in his desk.

[7] Appellant further contends that the court did not find that the note was delivered to plaintiff. The complaint

alleges that the note was "executed by her (decedent) to the plaintiff." The court found this allegation to be true. The term "executed" includes delivery. (Code Civ. Proc., sec. 1933; *Worthley* v. *Worthley,* 33 Cal. App. 473, 475 [165 Pac. 714]; *Van Valkenburgh* v. *Oldham,* 12 Cal. App. 572, 579 [108 Pac. 42].)

It is urged that plaintiff's cause of action was barred by the statute of limitations at the time the complaint herein was filed. [8] The statute did not begin to run against installments falling due after the death of the decedent until an administrator was appointed, January 3, 1921. (11 Cal. Jur. 754; 16 Cal. Jur. 562; *In re Bullard,* 116 Cal. 355, 357 [48 Pac. 219].) [9] "A party having a cause of action against the estate of a deceased person is not bound to cause administration to be had." (*Davis* v. *Hart,* 123 Cal. 384, 388 [55 Pac. 1060]; *Churchill* v. *Woodworth,* 148 Cal. 669, 673 [113 Am. St. Rep. 324, 84 Pac. 155].) The note provides that if any installment "is not paid within ninety days after the same becomes due" the whole of the unpaid principal and interest "shall forthwith become due and payable, at the election of the holder of this note." In the former action referred to herein, commenced August 23, 1917, the complaint alleged that, because of defaults in payments which had become due, "plaintiff . . . elected and so declared the whole of said principal sum, together with all interest thereon, due and payable." Appellant contends that such election set the statute in motion and that, therefore, the whole of the promissory note became barred at the end of four years thereafter. [10] Notwithstanding such election, it was still within the power of the plaintiff to waive the default, and, as against a subsequent action, the statute of limitations ran only from the maturity of installments as they fell due. (*California Sav. etc. Soc.* v. *Culver,* 127 Cal. 107, 112 [59 Pac. 292]; *Moore* v. *Russell,* 133 Cal. 297, 300 [85 Am. St. Rep. 166, 65 Pac. 624]; *Keeler* v. *Baird,* 48 Cal. App. 29, 33 [191 Pac. 563].) Further, as stated, the statute did not begin to run against any of such installments which fell due after the death of the decedent until the appointment of an administrator.

[11] By proceedings under section 1723 of the Code of Civil Procedure, the lot in question was, on May 7, 1917, set apart to Crowson as the surviving husband of decedent.

Crowson has been in possession of the property at all times since and has paid all taxes thereon. Appellant contends that he thereby acquired title, as against plaintiff, by adverse possession. Section 1474 of the Code of Civil Procedure provides that when such a homestead is so set apart "it is not subject to the payment of any debt or liability contracted by or existing against the husband and wife, or either of them, previous to or at the time of the death of such husband or wife, except as provided in the Civil Code." Section 1241 of the Civil Code provides: "The homestead is subject to execution or forced sale in satisfaction of judgments obtained . . . on debts secured by . . . vendor's liens upon the premises." It is clear that, under these code sections, Crowson took the property subject to the vendor's lien. His possession was no more adverse to plaintiff's lien than was that of decedent. He invaded no right of the plaintiff by holding such possession, and, therefore, his possession was not adverse. (*Sullivan* v. *Zeiner,* 98 Cal. 346, 350 [20 L. R. A. 730, 33 Pac. 209]; 2 C. J. 50.)

[12] Appellant contends that plaintiff is estopped to recover any sum out of the funds of the estate, because in the complaint in the former action he stated: "Said plaintiff hereby expressly waives all recourse, claim and demand, under and by virtue of said vendor's lien and said promissory note, against any and all property of the estate of the said Florence G. Crowson, deceased, . . . other than the real property described in the first paragraph of said complaint," the lot involved herein. In that action the plaintiff proceeded upon the mistaken theory that the law permitted the foreclosure of his vendor's lien without first presenting the claim secured thereby for allowance and payment out of the other assets of the estate. On appeal it was held that this could not be done. (*Hinkel* v. *Crowson, supra.*) Since such a claim had not been presented before the complaint in that action was filed, plaintiff was put to the necessity of dismissing the action. The alleged waiver was an attempt to exercise the option given a lien claimant by section 1500 of the Code of Civil Procedure, which provides that a lien may be enforced against the property of an estate subject thereto, without presenting the claim for allowance, "where all recourse against any other property of the estate is expressly waived in the complaint," the plaintiff apparently

overlooking the requirement of section 1475 to the effect that, if the lien be upon the homestead selected in the lifetime of the decedent, the claim "must be presented and allowed as other claims against the estate." It would hardly be contended that the plaintiff would have been bound by the alleged waiver if, prior to any action with relation thereto by the defendant to his prejudice, the plaintiff had filed an amended complaint omitting the waiver. It is not perceived that a different rule should be applied in case of a dismissal and the subsequent commencement of a new action. The defendants have not acted to their prejudice in any manner by reason of the alleged waiver and, in the absence of such prejudice, they cannot claim an estoppel. (10 Cal. Jur. 611.) [13] "If a plaintiff is mistaken and undertakes to avail himself of a remedy to which he is not entitled, he is not prevented from subsequently availing himself of the one to which he is entitled under the facts of the case. The defendant is placed in no worse position by reason of the unsuccessful prosecution of the action and there is consequently no estoppel." (10 Cal. Jur. 5.)

[14] The answer alleges that the decedent was the wife of Lewis Hinkel, the son of plaintiff, until the son's death on November 8, 1913; that the lot in question and other lots were purchased by the plaintiff and his son, as copartners, and the title thereto taken in the name of the plaintiff; that "plaintiff promised to give and convey the said lot of land described in the complaint to said Lewis and his wife Florence as and for their home, and thereupon said Lewis built a residence thereon for himself and his wife" and went into possession thereof and resided therein until the death of Lewis; that thereafter Florence held exclusive possession thereof until the time of her death; and that the conveyance involved herein was intended as a gift. It is contended that the plaintiff made an oral gift of the lot to his son and, apparently, that the conveyance to decedent was made for the purpose of completing the gift. It would require convincing evidence to establish that contention in the face of decedent's execution of the promissory note and her payment of the installments as they fell due thereon for so many months. The plaintiff testified that he purchased and paid for all the lots mentioned; that his son had charge of the building of houses

83 Cal. App.—7

thereon, under an agreement that the latter was to have half of the profits, if any, on the sale of the lots, but that no profits were realized therefrom; that the plaintiff paid all costs of construction of all the houses, including the one on the lot in controversy; and that the house on that lot was better constructed and more expensively finished than the others because it was the intention that the son and his wife should occupy it as their home. On cross-examination he testified as follows: "Q. And that was the understanding between you and your son, was it not, that when he had completed those eight buildings, including this house, that this house would be his? A. Yes. Q. But there was no consummation; you never carried out that understanding between you and your son during his lifetime, did you? A. No. . . . Q. Those houses were all finished by your son and yourself during the lifetime of your son, Mr. Hinkel? A. Yes, sir. Q. And, as I understand you to say—I may be wrong—upon completion of the buildings and the completion of the building on lot 13, the house in controversy here, your son and his wife moved in there, according to the arrangements between you and your son that he was to have that as his own; is that correct? A. No, not as his own." The plaintiff further testified that he supported his son and the latter's wife during their married life. The evidence is certainly sufficient to justify the finding that the property was not given to the son or to his surviving wife, but that the conveyance to the latter was made pursuant to a sale thereof to her by the plaintiff.

[15] Section 1498 of the Code of Civil Procedure provides that when a claim is rejected "written notice of such rejection shall be given by the executor or administrator to the holder of such claim, . . . and the holder must bring suit in the proper court against the executor or administrator within three months after the date of service of such notice if the claim be then due." Appellant contends that this action was not commenced within the time prescribed by that section. The claim upon which the suit is based was neither allowed nor expressly rejected by the administrator. Neither was any notice of rejection served upon the plaintiff. Under the provisions of section 1496 of the Code of Civil Procedure the plaintiff elected to treat the failure of the administrator to allow the claim as a rejection thereof.

The limitation prescribed by section 1498 has no application to such a case. (*Bank of Ukiah* v. *Shoemake*, 67 Cal. 147 [7 Pac. 470]; *Cowgill* v. *Dinwiddie*, 98 Cal. 481, 483 [33 Pac. 439]; *Gregory* v. *Clabrough's Exrs.*, 129 Cal. 475, 479 [62 Pac. 72].)

[16] It is urged that the judgment against the estate "only establishes the claim in the same manner as if it had been allowed by the administrator" and that he or any other heir of the deceased "can contest the claim even after a judgment and affirmance on appeal and have a jury trial" of the question of its validity; citing section 1504 of the Code of Civil Procedure and *Estate of Hellier*, 169 Cal. 77 [145 Pac. 1008], and that, therefore, the judgment is erroneous in directing a sale of the lot in the event of a deficiency, after applying available funds of the estate toward the satisfaction of the judgment. The latter provision in the judgment does not preclude a contest of the claim by any person who otherwise may have the right to contest it. No good reason appears for requiring the plaintiff to prosecute two actions for the collection of a single debt. The decree makes provision for further proceedings, in the event of a deficiency of assets of the estate, as follows: "It is further ordered, adjudged and decreed, that in the event that the funds of the said estate shall prove insufficient to pay the whole of the amount of this judgment, the plaintiff shall be at liberty to apply, at the foot of the judgment, for further directions." In *Moore* v. *Russell*, 133 Cal. 297 [85 Am. St. Rep. 166, 65 Pac. 624], the claim of the plaintiff for the amount of a promissory note secured by a mortgage, executed by the decedent, was rejected by the administrator and suit was brought thereon. Judgment in favor of the plaintiff establishing the claim, foreclosing the mortgage and providing for a recovery against the administrator for any deficiency after sale of the mortgaged premises, to be paid in due course of administration, was affirmed. No reason appears for applying a different rule here, and no authority is cited in support of appellants' contention. The same objections which are made here could have been made with equal force to the judgment in the case cited.

Appellants argue more than forty alleged errors. It would require an opinion of undue length to discuss them all specifically. Most of them are substantially covered

in the foregoing discussion.   The remainder have been carefully considered and are deemed wholly without merit.

The judgment is affirmed.

Plummer, J., and Hart, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 11, 1927.