[L. A. No. 18380. In Bank. Jan. 18, 1944.]

SEYMOUR BUXBOM, Respondent, v. E. F. SMITH et al., Appellants.

538

W. T. Stockman and John L. Flynn for Appellants.

Franz R. Sachse, Jesse E. Jacobson, John C. Packard and E. A. Oppenheim for Respondent.

CURTIS, J.—This is an action for damages sustained in conjunction with a breach of two contracts of employment. The cause was tried before the court sitting without a jury, findings were made in favor of the plaintiff, and from the judgment based thereon the defendants now appeal.

The complaint sets forth two oral contracts contemporaneously made on February 12, 1939, and the purported cancellation of both of them as the preliminary basis for relief. One was a contract by which the defendants employed the plaintiff for a period of six months to handle the publication of a newspaper—a "shopping news"—to carry free of charge all advertising of a chain of public markets owned and operated by the defendant Smith and to carry at reasonable rates advertising of other merchants in the same area, the plaintiff to receive 25 per cent of the gross advertising receipts for his management services. The other was a contract whereby the defendants employed the plaintiff for the same term of six months to distribute weekly the newspaper above mentioned

at the rate of five dollars per thousand copies. The defendants purported to cancel these two contracts soon after they were made—the first some nine days and the second some six weeks following the date of agreement—and they refused to perform them further, both purported cancellations being without the plaintiff's consent. It is also alleged that at the time of making the contracts the plaintiff was the owner of a distributing business and was engaged in distributing handbills, newspapers and advertising matter in the region where this newspaper was to be circulated, and that immediately after the contracts were made the plaintiff solicited advertising from merchants in the designated area, enlarged his distributing crews, employed additional supervisors, mapped out districts and routes for circulation, and prepared to handle the distribution of 40,000 copies of said newspaper. It is further alleged that immediately following the defendants' purported cancellation of the second or distribution contract, "defendants employed plaintiff's distributing crews and supervisors in said area." The complaint finally enumerates seven items of damage sustained by plaintiff in connection with the breach of these two contracts, including the recital of "the sum of $5,000 for the loss of plaintiff's trained organization, supervisors and good will and for general damages to plaintiff's business," and it concludes with a prayer for the aggregate amount of these several damage specifications, "for costs of suit and for such other and further relief as may seem just and equitable."

No demurrer was interposed to the complaint, but an answer was filed by the defendants herein denying specifically the material allegations of the plaintiff's pleading. At the conclusion of the trial upon the issues as so framed, the court, in making its findings generally in the plaintiff's favor, followed in substance the language of the complaint as above outlined, except as to damages. Specifically in this latter connection, while the court denied the plaintiff any commissions for the sale of advertising and his claim for certain miscellaneous expenditures in relation thereto, it awarded the plaintiff "the sum of $1,121.40, representing the profit which would have been derived by plaintiff from the distribution of said paper for the remainder of the term of said distribution contract," the sum of $35 in compensation for two items of expense incurred with reference to preparation for performance of the publication contract, and "the further sum of

$4,000 for the loss of plaintiff's trained organization, supervisors, good will and for general damages to plaintiff's business." Judgment accordingly was entered in favor of the plaintiff and against the defendants in the sum of $5,156.40, and costs.

The main point in controversy on this appeal concerns the amount of damages recoverable by the plaintiff in this action. However, before considering the principles of law relating to that question, certain preliminary observations should be made. The evidence establishes without conflict that the defendant Wright acted in all the matters involved herein as the agent of the defendant Smith and that this fact was at all times known to the plaintiff. The defendant Wright therefore contends that he is not liable at all for any part of the damage award. The plaintiff does not dispute this proposition, but, on the contrary, he states in his brief addressed to this court that "no question is directed to [a] reversal of the judgment against the defendant Wright." This unequivocal concession by the plaintiff will be accepted as determinative of this issue in favor of the defendant Wright, and there only remains to be considered the propriety of the judgment as rendered against the defendant Smith. ▮ There can be no argument under the record as to the authority of Wright to act for Smith in making the contracts here involved. The plaintiff testified that before these contracts were made, and at a time when he was negotiating with Wright on the subject, he saw Smith and told him he had been talking to Wright about distributing circulars, and discussed the newspaper, "and he seemed rather busy; and he said, 'No, you take all those matters up with Mr. Wright; he handles all that; and anything you do with him is all right for the company.' " Accordingly, the plaintiff made no further effort to deal with Smith directly but made his arrangements with Wright. This status of affairs was not controverted by any witness in the case, and Smith, though present at the trial, did not testify at all in challenge of the plaintiff's account of these business dealings. Thus, the evidence amply sustains the finding of liability against the defendant Smith as a party to the contracts in question.

▮ Passing now to a consideration of the principal question here presented for determination—the amount of damages recoverable in this action—complaint on this appeal is directed solely to the $4,000 item awarded "for the loss of

plaintiff's trained organization, supervisors, good will and for general damages to plaintiff's business.'' It is argued that such award could be made only in some action sounding in tort, and that it therefore has no place in litigation premised on a "breach of contract of employment.'' There can be no doubt as to the proposition that this damage assessment cannot be sustained as compensation for the direct breach of either of the six-month contracts here involved. Obviously, the item for loss of plaintiff's distributing organization, etc., has no relation to the breach of the contract for managing the publication of the newspaper. For the purpose of fulfilling his obligations under that contract the plaintiff needed no such organization and could use none, and the defendants' refusal to perform that contract could not have affected it.

Equally plain is the fact that such item could not be a proper element of damages for breach of the distribution contract. That contract provided for the weekly circulation of newspapers at a definite price, and by the defendants' acts the plaintiff was prevented from performing it after a short period of time. He was fully paid for the performance rendered, and his damages for that specified default on the part of the defendants would be limited to compensation for the performance prevented. The rule in such case is stated in 25 Corpus Juris Secundum, section 78, page 575, as follows: ''Where, without fault on his part, one party to a contract who is willing to perform it is prevented from doing so by the other party, the primary measure of damages is the amount of his loss, which may consist of his reasonable outlay or expenditure toward performance, and the anticipated profits which he would have derived from performance.'' In conformity with this rule see sections 1512 and 3300 of the Civil Code; also *Cederberg* v. *Robison,* 100 Cal. 93, 97-99 [34 P. 625]; *Shoemaker* v. *Acker,* 116 Cal. 239, 245 [48 P. 62]; *Connell* v. *Higgins,* 170 Cal. 541, 549 [150 P. 769]; *Overstreet* v. *Merritt,* 186 Cal. 494, 502-506 [200 P. 11]; *Blair* v. *Brownstone Oil & Refining Co.,* 35 Cal.App. 394, 396 [170 P. 160]; *Spitzer* v. *Pathe Exchange, Inc.,* 132 Cal.App. 612, 620 [23 P.2d 308]; *Caspary* v. *Moore,* 21 Cal.App.2d 694, 699 [70 P.2d 224]. From the record evidence bearing upon the consequences of the breach of the distribution contract it appears that the plaintiff did not seek to show with any degree of monetary certainty a loss based upon the first-mentioned ground of recoverable damage, that is, some *reasonable outlay or expendi-*

542

*ture in anticipation of performance*—nor does the challenged $4,000 specification purport to be identifiable with that element of recompense—so that the award coincident with the second premise of relief, the *amount of profits* which the court found from the established facts the plaintiff would have made if allowed to complete the contracted undertaking, constituted the plaintiff's full measure of compensation as to this phase of the case. However, it is the plaintiff's position that his complaint against the defendants presents, in addition to the question of liability for the breach of the specified contractual obligations, the further issue of their tortious interference with his established business by their appropriation of his distributing crews, and that his proof of damages at the trial sustains the propriety of the court's award in this latter connection.

▇ While orderly procedure demands a reasonable enforcement of the rules of pleading, the basic principle of the code system in this state is that the administration of justice shall not be embarrassed by technicalities, strict rules of construction, or useless forms. (*Rogers* v. *Duhart,* 97 Cal. 500 [32 P. 570]; *Menefee* v. *Oxnam,* 42 Cal.App. 81 [183 P. 379]; *Masero* v. *Bessolo,* 87 Cal.App. 262 [262 P. 61].) Since the enactment of section 452 of the Code of Civil Procedure in 1872, it has been generally recognized that in the construction of a pleading for the purpose of determining its effect, "its allegations must be liberally construed, with a view to substantial justice between the parties." (*Estate of Wickersham,* 153 Cal. 603 [96 P. 311]; *Mix* v. *Yoakum,* 200 Cal. 681 [254 P. 557]; *Terry Trading Corp.* v. *Barsky,* 210 Cal. 428 [292 P. 474]; *Von Schrader* v. *Milton,* 96 Cal.App. 192 [273 P. 1074].) No error or defect in a pleading is to be regarded unless it affects substantial rights. (Code Civ. Proc., sec. 475.) "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." (Civ. Code, sec. 3281.) ▇ The subject matter of an action and the issues involved are determinable from the facts alleged rather than from the title of the pleading or the character of damage recovery suggested in connection with the prayer for relief. (*Luckey* v. *Superior Court,* 209 Cal. 360 [287 P. 450]; *Hinkel* v. *Crowson,* 83 Cal.App. 87 [256 P. 479].) In defining the relief which may be awarded to plaintiff where an answer in the action has been filed, section 580 of the Code of Civil Procedure provides that "the court

may grant him any relief consistent with the case made by the complaint and embraced within the issues.'' ■ Moreover, the matter of pleading becomes unimportant when a case is fairly tried upon the merits and under circumstances which indicate that nothing in the pleadings misled the unsuccessful litigant to his injury. (*Stein* v. *United Railroads of San Francisco,* 159 Cal. 368 [113 P. 663]; *Tietke* v. *Forrest,* 64 Cal.App. 364 [221 P. 681].) Consistent with these liberal principles is the mandate of section 4½ of article VI of the state Constitution: ''No judgment shall be set aside . . . for any error as to any matter of pleading . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'' A careful review of the entire record in this case in the light of the foregoing observations compels the conclusion that the relief awarded plaintiff is commensurate with the injuries shown to have been sustained.

■ The complaint is in one count, and while independent of its statement of the two breaches of contract, its allegations referable to the loss occasioned by the tortious acts of defendants are somewhat scant, they are sufficient to present the basis of plaintiff's claim in relation to this objectionable conduct. The complaint recites that after the purported cancellation of the distribution contract, the defendants ''employed plaintiff's distributing crews and .supervisors in said area,'' and upon this charge it predicates as an item of damages ''the sum of $5,000 for the loss of plaintiff's trained organization, supervisors and good will and for general damages to plaintiff's business.'' It is clear from the broad scope of the complaint that the plaintiff was seeking to adjust in a single action the whole matter in controversy between the parties, to secure redress not only for the breaches of contract, but for the subsequent wrongs and injuries committed by the defendants in connection with a related set of operative facts. If the defendants had desired to urge any objection to the form or general character of the plaintiff's charge, they should have availed themselves of the remedy of special demurrer as provided by section 430 of the Code of Civil Procedure. However, instead of taking such step, they filed an answer denying specifically all the material allegations of the complaint, and the case proceeded to trial upon the issues as thus framed by the pleadings.

Turning to the evidence bearing upon this phase of the plaintiff's claim to relief, the record discloses the following pertinent considerations: At the trial the plaintiff testified as to the activity and development of his handbill and advertising distribution business over a period of some four years in the territory here involved; his successful prosecution of certain litigation to test the validity of handbill ordinances in his field of operation as a factor both in establishing the sound basis of his enterprise and in motivating his employment by the defendants some few weeks later to manage the publication of and handle the circulation of their newspaper advertising material in the specified area; defendant Wright's complete understanding of the scope, efficiency and method of operation of plaintiff's organization at the time the contracts were negotiated; the enlargement and improvement of his distributing crews in preparation for immediate performance of the distribution contract; Wright's purported cancellation of the agreement covering the plaintiff's services in connection with the management of the publication—nine days following the date of its making—and re-affirmance then of the contemporaneously negotiated distribution arrangement; plaintiff's loss of several important advertising accounts as the result of his serving defendants in the competitive district, and his communication of this loss to Wright as the basis for his dependence on the completion of the distribution contract to sustain his organization. The plaintiff further testified that incident to the defendants' purported cancellation of the distribution contract some five weeks later, they immediately "took over" his operating crews in the territory wherein he had been circulating their advertising material; that while the value of his organization was probably six or seven thousand dollars, he "should be able to get about $4,000 for it in the market."

One of the supervisors of plaintiff's work crews at the time here involved testified that upon the loss of the defendants' distributing business, the plaintiff's organization in the various districts of the rural area of previous circulation "collapsed completely" and "the boys were taken over" by the defendants. At the introduction of this witness' testimony the defendants' counsel argued that such matter would not prove an element of damage for "the breach of contract for employment." This objection was overruled by the trial court upon the ground that the proffered evidence was properly supportive of the plaintiff's pleading of additional detriment

by reason of "the loss of his organization," and the defendants' counsel accepted this construction of the complaint without further protest throughout the remainder of the trial. Thereupon, the plaintiff produced several witnesses to attest to various details in connection with the circumstances of collapse of his business. Among them was another of plaintiff's supervisors, who stated that during the period of performance under the distribution contract he had left with one of the employees of the Smith chain of markets the plaintiff's complete records as to the personnel of the latter's organization, the maps and routing of the districts being serviced for defendants, and the bookkeeping requirements incident to such scope of operation; that so far as he knew, said employee was still in possession of that data on behalf of the defendants. At the trial the defendant Wright admitted in substance that prior to the negotiation of the contracts in question he had full knowledge of the plaintiff's method of distribution through the employment of crews of boys, although he denied that he was aware that plaintiff's business records were subsequently maintained at any of the Smith markets for checking. In other respects the evidence bearing on this branch of the case as produced on behalf of the defendants presents little conflict with the plaintiff's showing. As above stated, the defendant Smith, though in attendance at the trial, did not testify at all in the matter.

From this review of the record it would appear that the trial court's finding against the defendants on the proposition of their disruption of the plaintiff's established business and the consequent liability of $4,000, the amount the plaintiff fixed as representative of his loss in this connection, was directly responsive to the issues submitted by the parties for consideration both upon the evidence and the pleadings. The single objection of the defendants' counsel to the sufficiency of the complaint to sustain the introduction of proof of damage of a tortious nature following the alleged unjustifiable breaches of contract was directed simply to the form of the plaintiff's statement of the related facts of the case, and in overruling such objection the trial court plainly indicated its theory that the basic sequence of events as charged would warrant an adjustment of the entire matter in controversy between the parties. Neither then nor at any other time in the course of the trial did the defendants' counsel argue

any matter of substance as to the plaintiff's right of redress commensurate with proof of the claimed tortious interference with his business, but rather said counsel apparently accepted the issues as defined by the trial court and proceeded to present the evidence for the defendants in accordance therewith. Since the record establishes beyond dispute that the tort damage to the plaintiff—the defendants' appropriation of his work crews immediately following the unjustified repudiation of the distribution contract—was made possible solely by reason of the parties' entry into the contractual arrangement of employment in the first instance, there certainly was some practical foundation for the plaintiff's seeking complete recompense for his combined injuries in one action and for the trial court's undertaking to adjust the rights of the parties by a single judgment on a "just and equitable" basis. The defendants do not contend that they suffered any prejudice or were misled by any formal deficiency or irregularity in the plaintiff's pleading, nor would the record sustain such argument if made. The issues were fully and understandingly tried by the parties, and after a fair and impartial trial of those issues the trial court found upon substantial evidence in accordance with the plaintiff's claim. Consistent with these considerations the award of the $4,000 item of damage for the tort injury involved in this action must be sustained.

Everyone has the right to establish and conduct a lawful business and is entitled to the protection of organized society, through its courts, whenever that right is unlawfully invaded. Such right existing, the commission of an actionable wrong is established against any one who is shown to have intentionally interfered with it, without justifiable cause or excuse. (*Weinstock, Lubin & Co.* v. *Marks,* 109 Cal. 529 [42 P. 142, 50 Am.St.Rep. 57, 30 L.R.A. 182]; *Delz* v. *Winfree, Norman & Pearson,* 80 Tex. 400 [16 S.W. 111, 26 Am. St.Rep. 755]; *Walker* v. *Cronin,* 107 Mass. 555; *Schonwald* v. *Ragains,* 32 Okla. 223 [122 P. 203, 39 L.R.A.N.S. 854].)

The justification advanced is generally the right to conduct a business in competition with that of the plaintiff, and where the means of interference involve no more than recognized trade practices such as advertising or price-cutting, the plaintiff's loss as the result of the competitive strife is deemed *damnum absque injuria.* (*Katz* v. *Kapper,* 7 Cal. App.2d 1 [44 P.2d 1060]; see Carpenter, *Interference with Contract Relations,* 41 Harv.L.Rev. 728, 743; Rest. Torts,

secs. 766-768; Prosser, Torts, p. 1015.) ▮ Similarly, it is not ordinarily a tort to hire the employees of another for use in the hirer's business. (*Triangle Film Corp.* v. *Artcraft Pictures Corp.*, 250 F. 981 [163 C.C.A. 231]; *Harley & Lund Corporation* v. *Murray Rubber Co.*, 31 F.2d 932; *McCluer* v. *Super Maid Cook-Ware Corporation*, 62 F.2d 426; *Driver* v. *Smith*, 89 N.J.Eq. 339, 357 [104 A. 717]; *Jones* v. *Ernst & Ernst*, 172 La. 406, 410 [134 So. 375]; see *Beekman* v. *Marsters*, 195 Mass. 205, 211 [80 N.E. 817, 122 Am.St.Rep. 232, 11 Ann. Cas. 332, 11 L.R.A.N.S. 201].)

▮ This immunity against liability is not retained, however, if unfair methods are used in interfering in such advantageous relations. (Prosser, Torts, p. 1023 et seq., and cases cited.) ▮ In this particular case there are special circumstances which bring it outside the ordinary course of competition. Here the record shows that the defendants gained an unfair advantage over the plaintiff through deceptive dealings in the form of a contractual arrangement whereby they deliberately induced the plaintiff to build up his distributing organization to a level consistent with the advertising needs of their then noncompeting business—a chain of public markets—for circulation of a "shopping news," and then, having acquired through their employment agreement with the plaintiff, complete knowledge of his business methods and records, they undertook to terminate their relationship with him, hired his crews, and assumed control of his valuable enterprise. The defendants knew that the plaintiff relied upon the performance of the distributing contract as a sustaining factor in the maintenance of his organization, for, as above noted, on the defendants' unjustified repudiation of their obligations under the publication contract, the plaintiff told the defendant Wright of his loss of other customers incident to his servicing the defendants in the competitive field. On the subject of his conversation with the defendant Wright at that time, the plaintiff further testified: "I said, 'Now, you have taken the advertising away from me, and how do I know you won't take this distribution away from me?' I said, 'I would like to have the distribution agreement on a written contract.' He said, 'We do not need a written contract; our word is good enough.' . . . 'You need not worry about it.' . . . 'You can be assured that you will have our distribution, as we agreed to'; . . . 'Don't

worry'; . . . 'You are the only one that can handle the circulars out here anyway,' or something like that.'' Yet despite this solemn assurance of good faith in the matter, the defendants, having successfully evaded the plaintiff's request for a written memorandum of the contractual arrangement, purported to cancel some few weeks later, and concededly without cause, the distribution agreement and immediately thereafter appropriated unto themselves the plaintiff's entire business mechanism. From this evidence the conclusion is inescapable that the defendants, aware that the plaintiff was sacrificing and, to an extent, abandoning his previously established business connections in order to meet the demands of the defendants' advertising program, made false promises to the plaintiff without intention to perform the obligations so assumed in the promotion of their own interests.

As a result of this series of events, the defendant Smith acquired a strategic position. Since he had become plaintiff's sole customer, he was able to cut off the work required to sustain plaintiff's organization at the same time he was proceeding to hire the plaintiff's employees. Through his breach of contract he was able to prevent plaintiff from competing effectively for the retention of those employees. Although defendant's conduct may not have been tortious if he had merely broken the contract and subsequently decided to hire plaintiff's employees, an additional factor is present in this case. From the evidence the trial court could reasonably infer that the breach, at the time it was made, was intended as a means of facilitating defendant's hiring of plaintiff's employees. ▮ A breach of contract is a wrong and in itself actionable. ▮ It is also wrongful when intentionally utilized as the means of depriving plaintiff of his employees, and, in our opinion, constitutes an unfair method of interference with advantageous relations within the rule set forth above. It follows that said defendant was guilty of a tortious interference in the relationship between plaintiff and his employees. (See Prosser, Torts, p. 1023 et seq.; Rest. Torts, sec. 768.)

In accordance with the views herein expressed, the judgment against the defendant Smith is affirmed in its entirety, and the judgment against the defendant Wright is reversed.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.

EDMONDS, J., Concurring and Dissenting.—Considering the record in this case, I see no basis for the finding that the respondent is entitled to $4,000 for the loss of his trained organization, supervisors, good will and general damages, or the judgment in so far as it includes that amount. By other findings the court declared that one month after the cancellation of the respondent's contract for publishing the newspaper, the appellants "purported" to cancel his contract for the distribution of it and "immediately thereafter" employed his distributing crews and supervisors and "appropriated" his distributing organization. This is almost exactly the language of the complaint.

It is beyond question that a person is privileged to hire the employee of another who is not under a contract for future services and may not be held liable for a tort provided there is a bona fide business or competitive purpose in the hiring and the method of obtaining the employee's services is not unfair. (Cf. Rest., Torts, secs. 766-768; Prosser on Torts [1941] pp. 1015 et seq.) The evidence in the present case shows the justification of a business purpose recognized by this rule. True, there is an additional qualification imposed by the courts before a person may escape liability for an interference with the advantageous business relations of another; the method of interference must be lawful and fair. Use of violence, fraud, or other unfair methods will, in effect, destroy the privilege of interfering. (Rest. Torts, sec. 768(b), and see at p. 74, "Comment on Clause (b) : Means of inducement.") Breach of contract may constitute such an unfair method if its purpose was to obtain another's employees. The determining question, therefore, is whether there is any evidence that the breach of contract was intended and used for the purpose of obtaining Buxbom's employees.

There are no allegations in the complaint that the appellants breached either of their contracts for the purpose of interfering with the advantageous relations of Buxbom and his employees. Nor, in my opinion, is there any evidence from which this reasonably may be inferred. Fraud is never presumed; it must be clearly proved and the presumption of fair dealing approximates that of innocence of crime. Very evidently the trial judge drew no inference of fraud or unfair dealing from the testimony presented to him, for the findings do not charge the appellants with any intention

to breach the contract for the purpose of facilitating the hiring of Buxbom's employees.

Moreover, the contract as pleaded and found, includes no provision for a distributing organization. It did not require Buxbom to provide such an organization or to render any personal services; on the contrary, he might have complied with his agreement by subcontracting the entire work to others. And from the evidence it appears that Buxbom's "distributing organization" consisted of boys attending high school who were employed to distribute papers after school hours at a specified rate per thousand. The record also shows that after the distribution contract was canceled, Buxbom had no other work for them. Under these circumstances, the acts charged against the appellants come within the exceptions to the rule.

Although I concur in the conclusion of my associates that the judgment against the appellant Wright should be reversed, for the reasons stated I believe that the judgment as to the appellant Smith should be modified by disallowing the amount awarded for the loss of employees, and as so modified, affirmed.