130 Cal.Rptr.2d 793 (2003)
106 Cal.App.4th 433
Robert L. REEVES et al., Plaintiffs and Respondents,
v.
Daniel P. HANLON et al. Defendants and Appellants.
No. B151460.
Court of Appeal, Second District, Division Four.
February 20, 2003.
Review Granted June 11, 2003.
*794 Dwyer, Daly, Brotzen & Bruno, Toni Rae Bruno, Los Angeles, and Marlin D. Wall, Woodland Hills, for Defendants and Appellants.
Arter & Hadden, David Gurnick, Sue Bendavid-Arbiv, Woodland Hills; Robert L. Reeves & Associates, Robert L. Reeves, Pasadena, Robert J. DuPont and Richard M. Wilner, Long Beach, for Plaintiffs and Respondents.
Certified for Partial Publication.[*]
CURRY, J.
Appellants Daniel P. Hanlon, Colin T. Greene, and Hanlon & Greene, a professional corporation (H & G), challenge a judgment in favor of respondents Robert L. Reeves and the law offices of Robert L. Reeves & Associates, a professional corporation (RLRA), as well as the cost award and the trial court's stay of a judgment based on an arbitration award in favor of appellants and against respondents. We affirm the judgment and stay. Regarding the cost award, we affirm in part and reverse in part.

STATEMENT OF THE CASE

A. Operative Complaints

Reeves initiated this action against Hanlon, Greene, and H & G on August 3, 1999. Thereafter, Hanlon and H & G began a separate action against respondents on August 6, 1999. The actions were consolidated, and Greene filed a separate cross-complaint against respondents in the consolidated actions on February 14, 2000.
On February 1, 2000, respondents filed their second amended complaint, which alleged the following facts: Reeves's law firm employed Hanlon and Greene as attorneys. In 1998, Reeves entered into an agreement with Hanlon that entitled Hanlon to earn an equity position in a law firm to be called "Reeves and Hanlon." In 1999, Hanlon and Greene abruptly resigned from their positions with Reeves and Hanlon, and they improperly persuaded respondents' employees to join H & G, solicited respondents' clients to obtain services from H & G, misappropriated respondents' trade secrets, destroyed computer files, and withheld respondents' property, including a car. The second amended complaint asserted 14 claims, including intentional interference with contractual relationships, interference with prospective business opportunity, conspiracy to interfere with prospective business opportunity, misappropriation of confidential information and violation of the Uniform *795 Trade Secrets Act (UTSA) (Civ.Code, § 3426 et seq.), unauthorized use of a corporate car, and destruction of corporate property.
Appellants also filed amended complaints containing numerous claims against respondents. Hanlon and H & G's first amended complaint, which was filed on September 8, 1999, alleged that respondents had improperly withheld files and other materials belonging to H & G's clients after Hanlon resigned from Reeves and Hanlon, and that respondents had converted Hanlon's car. Greene's second amended cross-complaint, which was filed on May 26, 2000, alleged that respondents had failed to pay him commissions in accordance with his employment contract with Reeves and Hanlon.

B. Stipulation and Partial Settlement

Trial was set for July 3, 2000. On June 30, 2000, the parties stipulated to the abandonment of enumerated causes of action in the operative complaints and cross-complaint. Under the stipulation, respondents agreed to proceed to trial only on their claims for interference with contractual relationships and prospective business opportunity, conspiracy, misappropriation of confidential information and trade secrets, unauthorized use of a corporate car, and destruction of corporate property.
On July 5, 2000, the parties informed the trial court that they had a settlement of Greene's cross-complaint. The parties agreed that respondents' remaining claims would be resolved by a bench trial, that Hanlon and H & G would resolve their claims through binding arbitration, and that Greene would dismiss his separate cross-complaint in exchange for a release from various hens. The pertinent stipulation and settlement limited respondents' recovery following trial to $150,000. In addition, it guaranteed Hanlon and H & G an arbitration award "in an amount no less than $50,000 and up to a maximum amount of $150,000."

C. Trial[**]

D. Arbitration

On March 15, 2001, the arbitrator issued his award regarding Hanlon's and H & G's claims against respondents. The arbitrator ruled against Hanlon and H & G on all their claims, with the exception of their claim that the respondents had improperly delayed turning over client files after substitutions of attorneys had been signed and filed. The arbitrator awarded $5,000 in damages for this misconduct, and raised this sum to $50,000 in accordance with the "high-low" provision of the parties' stipulation and settlement.

E. Judgment, Costs, and Stay

On April 11, 2001, the trial court issued a statement of decision, concluding that appellants had engaged in interference with contracts and prospective business opportunity, and misappropriation of trade secrets, resulting in damages totalling $182,180.18. The trial court found the following damages: (1) $62,540.50 owed by 144 clients [1] who transferred to H & G; (2) $36,000 in lost future business revenue;[2] *796 (3) $61,639.68 in expenses incurred to mitigate appellants' wrongful acts, including $41,630.49 for advertising and $20,009.19 for recruitment expenses; and (4) $22,000 for unjust enrichment due for the theft of confidential information.[3]
Citing the parties' stipulation and settlement, the trial court reduced the award of damages to $150,000. A judgment awarding respondents this sum in damages and costs was filed on April 26, 2001.
On May 1, 2001, the trial court granted Hanlon and H & G's motion to confirm the arbitration award, and judgment was subsequently entered on this award. Respondents sought a stay of the enforcement of this judgment, and submitted a memorandum of costs, seeking $63,320 in costs. Appellants opposed this request for a stay, and filed motions to tax costs and for a new trial.
The trial court stayed enforcement of the judgment based on the arbitration award pending the resolution of any appeal from the judgment in respondents' favor. On June 26, 2001, the trial court granted the motion to tax costs in part, and denied it in part. Respondents were awarded $47,427.63 in costs. On the same date, the trial court denied the motion for a new trial. This appeal followed.

DISCUSSION
Appellants contend: (1) the interference claims fail as a matter of law and for want of substantial evidence; (2) the claim for misappropriation of confidential information and trade secrets is unsupported by substantial evidence; (3) the trial court erred in awarding costs; and (4) enforcement of the arbitration award judgment was improperly stayed.

A. Interference Claims

Appellants raise numerous contentions of error regarding the trial court's determinations that they had engaged in tortious interference with contractual relationships and with prospective economic advantage. We do not find reversible error in these determinations.
The two torts in question, though related, are distinct. (Delia Penna v. Toyota Motor Sales, U.S.A., Inc. (1995) 11 Cal.4th 376, 392, 45 Cal.Rptr.2d 436, 902 P.2d 740.) "In its simplest terms, to be liable for inducing breach of contract, there must be a valid contract. [Citation.] In comparison, a cause of action for interference with prospective economic advantage necessarily assumes that a contract has not yet been formulated." (PMC, Inc. v. Saban Entertainment, Inc. (1996) 45 Cal.App.4th 579, 595, 52 Cal.Rptr.2d 877.) As our Supreme Court explained in Delia Penna v. Toyota Motor Sales, U.S.A, Inc., supra, 11 Cal.4th at page 392, 45 Cal. Rptr.2d 436, 902 P.2d 740, courts must "firmly distinguish the two kinds of business contexts, bringing a greater solicitude to those relationships that have ripened into agreements, while recognizing that relationships short of that subsist in a zone where the rewards and risks of competition are dominant."
The two torts thus differ in their elements. "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) *797 resulting damage." (Pacific Gas & Electric Co. v. Bear Stearns & Co. (1990) 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1, 791 P.2d 587.)
By contrast, the elements of the tort of interference with prospective economic advantage include: "`(1) the existence of a prospective business relationship containing the probability of future economic rewards for plaintiff; (2) knowledge by defendant of the existence of the relationship; (3) intentional acts by defendant designed to disrupt the relationship; (4) actual causation; and, (5) damages to plaintiff proximately caused by defendant's conduct. [Citation.]'" (PMC, Inc. v. Saban Entertainment, Inc., supra, 45 Cal. App.4th at p. 595, 52 Cal.Rptr.2d 877.)
In addition, the plaintiff must establish that the defendant "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." (Delia Penna v. Toyota Motor Sales, U.S.A., Inc., supra, 11 Cal.4th at p. 393, 45 Cal.Rptr.2d 436, 902 P.2d 740.) As our Supreme Court clarified in Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 56, 77 Cal.Rptr.2d 709, 960 P.2d 513, this additional requirement of independent wrongfulness does not apply to the tort of interference with contract.
To the extent that appellants challenge the trial court's factual determinations, we examine the record for substantial evidence to support the trial court's findings. (Nordquist v. McGraw-Hill Broadcasting Co. (1995) 32 Cal.App.4th 555, 561, 38 Cal. Rptr.2d 221.) By contrast, we independently review the trial court's resolution of questions of law. (Home Depot, U.S.A., Inc. v. Contractors' State License Bd. (1996) 41 Cal.App.4th 1592, 1599, 49 Cal. Rptr.2d 302.)
At the outset, we observe that appellants' challenges to the trial court's factual determinations selectively emphasize evidence and inferences supporting appellants' position. However, review for substantial evidence is not trial de novo. (Angela S. v. Superior Court (1995) 36 Cal.App.4th 758, 762, 42 Cal.Rptr.2d 755.) On review for substantial evidence, "all the evidence must be examined, but it is not weighed. All the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity, to be accepted by the trier of fact. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed." (Estate of Teel (1944) 25 Cal.2d 520, 527, 154 P.2d 384, italics added.)

1. Interference With Contractual Relations

We begin with appellants' contentions regarding interference with contractual relations.

a.-b.[***]

c. At-Will Employment Contracts

Finally, citing GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc. (2000) 83 Cal.App.4th 409, 99 Cal. Rptr.2d 665 (GAB), appellants contend that the contract interference claim fails insofar as it charges that they induced at-will employees from the Reeves firm to breach their employment contracts.
We decline to Mow GAB. In GAB, a regional vice-president of a large public adjusting company accepted an offer from a competitor. (GAB, supra, 83 Cal. App.4th at pp. 413-14, 99 Cal.Rptr.2d 665.) Before he left the public adjusting company, he successfully recruited several *798 at-will employees to join the competitor. (Ibid.) Thereafter, the public adjusting company asserted claims of breach of fiduciary duty, unfair competition, misappropriation of trade secrets, and inference with contract against the former vice-president and the competitor. (Id at p. 415, 99 Cal.Rptr.2d 665.) A jury rendered verdicts unfavorable to the public adjusting company on all these claims. (Ibid.)
The court in GAB held that the claim for interference with the at-will employment contracts failed as a matter of law. (GAB, supra, 83 Cal.App.4th at pp. 426-428, 99 Cal.Rptr.2d 665.) Although the GAB court recognized that an at-will nature of a contract, in itself, does not preclude an interference claim, it nonetheless reasoned that employers could not assert claims of interference of contract based on their at-will relationships with employees. (Id. at p. 427, 99 Cal.Rptr.2d 665.) On this matter, it cited an apparent lack of case law expressly authorizing such claim, as well as public policy supporting the mobility of employees. (Id. at pp. 427-428, 99 Cal. Rptr.2d 665.)
We respectfully disagree with the court in GAB, to the extent that it may have held that a third party is not liable for inducing at-will employees to breach their employment contracts, even though the third party acted in an unjustifiable manner. Any such conclusion is irreconcilable with the case law governing interference with contract claims.
As Witkin observes, the tort in question originated in a case in which an employer sought relief for interference with an employee's contract: "In the celebrated case of Lumley v. Gye (1853) 118 Eng.Rep.R. 749, Miss Wagner, an opera singer, had agreed to sing exclusively for plaintiff, and defendant, with knowledge of the contract, persuaded her to refuse to perform. The court held that an action would lie for wilfully inducing the breach of contract. The doctrine of this case has been gradually extended to apply to inducing breach of any type of contract...." (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 642, p. 732.)
In Imperial Ice Co. v. Rossier (1941) 18 Cal.2d 33, 36-58, 112 P.2d 631, our Supreme Court adopted the majority rule governing this tort, as codified in the first Restatement of Torts, stating that "an action will he for unjustifiably inducing a breach of contract." (Id. at p. 39, 112 P.2d 631.) The court in Rossier explained: "[A]n action will lie for inducing breach of contract by a resort to means in themselves unlawful such as libel, slander, fraud, physical violence, or threats of such action. [Citations.] Most jurisdictions also hold that an action will he for inducing a breach of contract by the use of moral, social, or economic pressures, in themselves lawful, unless there is sufficient justification for such inducement. [Citations.] [f ] Such justification exists when a person induces a breach of contract to protect an interest that has greater social value than insuring the stability of the contract." (Id. at p. 35,112 P.2d 631.)
Subsequently, in Buxbom v. Smith (1944) 23 Cal.2d 535, 145 P.2d 305, the Supreme Court applied these principles in circumstances resembling the facts before us. In Buxbom, the owner of a chain of markets entered into contracts with a handbill publisher to prepare and distribute a weekly advertising newsletter. (Id. at pp. 538-539, 145 P.2d 305.) To fulfill these contracts, the publisher hired more employees to handle the distribution, including supervisors and crews of delivery boys. (Id. at pp. 539, 544-545, 145 P.2d 305.) After the market owner breached the contracts and hired the publisher's distribution employees, the publisher sued the market owner, seeking damages for, *799 inter alia, "`the loss of plaintiffs trained organization [and] supervisors (Id. at pp. 538-539, 540-541, 145 P.2d 305.) Following a bench trial, judgment was entered in the publisher's favor. (Id. at p. 538,145 P.2d 305.)
The court in Buxbom held that the publisher had established tortious interference with his employment contracts. (Buxbom v. Smith, supra, 23 Cal.2d at pp. 546-548, 145P.2d 305.) It stated: "[I]t is not ordinarily a tort to hire the employees of another for use in the hirer's business. [Citations.] [¶] This immunity against liability is not retained, however, if unfair methods are used in interfering with such advantageous relations." (Id. at p. 547, 145 P.2d 305.) Turning to the facts before it, the Buxbom court concluded that the market owner had lost any such immunity from liability, pointing to evidence that soon as he became familiar with the distribution process, he had terminated the contracts and taken over the distribution organization. (Id. at p. 544, 145 P.2d 305.) The court reasoned that by breaking the contracts, the market owner had unfairly deprived the publisher of the means of retaining his employees. (Id. at p. 548, 145 P.2d 305.)
The court in Buxbom did not identify the employees in question as at will, and thus it did not discuss whether its reasoning hinged on the nature of their employment contracts. However, any unclarity regarding the latter point was apparently resolved shortly after Buxbom in Speegle v. Board of Fire Underwriters (1946) 29 Cal.2d 34,172 P.2d 867.
In Speegle, an insurance agent employed at will by several insurers alleged that an association of insurers had induced some insurers to end their agency contracts with him. (Speegle v. Board of Fire Underwriters, supra, 29 Cal.2d at pp. 37-39, 172 P.2d 867.) The court in Speegle held that his complaint alleged a tenable claim for interference with contract, reasoning that "the great majority of the cases have held that unjustifiable interference with contracts terminable at will is actionable." (Id. at p. 39, 172 P.2d 867.)
Among the key cases the Speegle court cited in connection with this proposition is Hitchman Coal & Coke Co. v. Mitchell (1917) 245 U.S. 229, 262, 38 S.Ct. 65, 62 L.Ed. 260, in which the United States Supreme Court affirmed an injunction obtained by an employer barring a union from inducing at-will employees to breach their employment contracts. In view of Hitchman, Speegle indicates that interference with at-will employment contracts is actionable by employers.
Buxbom and Speegle were followed in Diodes, Inc. v. Franzen (1968) 260 Cal. App.2d 244, 255-256, 67 Cal.Rptr. 19, and Hollingsworth Solderless Terminal Co. v. Turley (9th Cir.1980) 622 F.2d 1324, 1337, which held that an employer may assert a claim for unfair competition against a third party that uses unfair methods in hiring its at-will employees. In so concluding, the court in Diodes, Inc. indicated that its determination could also be "bottled" under the label "contract interference...." (260 Cal.App.2d at p. 255, 67 Cal.Rptr. 19; see also Pacific Gas & Electric Co. v. Bear Stearns & Co., supra, 50 Cal.3d at p. 1127, 270 Cal.Rptr. 1, 791 P.2d 587 [affirming that interference with at-will contracts is generally actionable by parties to the contract].)
Buxbom, Speegle, and the other cases discussed above pre-date Quelimane Co. v. Stewart Title Guaranty Co., supra, 19 Cal.4th at page 56, 77 Cal.Rptr.2d 709, 960 P.2d 513, in which our Supreme Court clarified the elements of tortious interference with an existing contract. The Quelimane court stated that a plaintiff asserting this tort need not establish that the defendant's *800 conduct was "wrongful apart from the interference with the contract itself," but indicated that the defendant is not liable if it shows that the interference was "`a minor and incidental consequence'" of proper conduct (quoting Rest.2d Torts, § 766, com. j at p. 12) or that the defendant "had a legitimate business purpose which justified its actions...." (19 Cal.4th at pp. 55-57, 77 Cal.Rptr.2d 709, 960 P.2d 513.)
Viewed through the lens of Quelimane, the holdings in Buxbom and Speegle imply that an employer may recover for interference with the employment contracts of its at-will employees by a third party when the third party does not show that its conduct in hiring the employees was justifiable or legitimate. (See also Rest.2d Torts, § 768.) Nothing in this authority or any other authority cited in GAB supports the contrary view, namely, that a person who hires the at-will employees of another employer enjoys a special immunity from liability for tortious interference, notwithstanding the person's use of unjustifiable or unfair methods to lure these employees. We therefore depart from GAB, to the extent that it endorses this view.
Here, the evidence indicates that Hanlon and Greene engaged in unfair and unjustifiable misconduct in the course of hiring employees from the Reeves firm. As we explain further below (see pts. A.2.a. and C, ante), there is substantial evidence that they mounted a campaign against the Reeves firm involving destruction of computer records, misuse of confidential information, and unethical conduct, of which the cultivation of employee discontent was only a component. This campaign unfairly impaired the Reeves firm's ability to retain its employees. For this reason, we conclude that a claim for interference with contract was proper under Buxbom and Speegle.[6]
2.[]

DISPOSITION
The order denying the motion to tax costs is reversed solely to the extent that it awards respondents the items valued at $1,955.09 and identified in part D.4, supra, and the matter is remanded to the trial court to vacate this order and enter a new order regarding costs in accordance with this opinion. The judgment, orders of the trial court, and stay are otherwise affirmed in all respects. The parties are to bear their own costs.
We concur: CHARLES S. VOGEL, P.J., and EPSTEIN, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions to be published are the first paragraph of the opinion, the Statement of the Case parts A, B, D and E, the first paragraph of the Discussion, the first seven paragraphs of part A of the Discussion, part A.1.c. of the Discussion, and the Disposition.
[**] See footnote *, ante.
[1] The trial court determined that only 144 of the 147 clients who left the Reeves firm without paying their balances acted on the basis of misconduct by Hanlon and Greene.
[2] In calculating for lost future business revenue, the trial court determined that one-third of the 144 clients who transferred to H & G would have furnished 48 new contracts, each having a contract of approximately $2,000, and it applied a collection rate of 7 percent and a profit rate of 50 percent to these contracts.
[3] The trial court determined that the list identified 2,200 clients, and it imposed a royalty fee of $10 per client (Civ.Code, § 3426.3, subd. (b)).
[***] See footnote *, ante.
[6] Finally, we observe that even if the interference claim cannot rest on the hiring of at-will employees, this error is not prejudicial. Although the trial court found there were damages of $182,180.18, it limited the damage award to $150,000 in accordance with the parties' stipulation and settlement. Because only $20,009.19 of these damages are attributable to appellants' improper solicitation of the Reeves firm's employees, error regarding this item of damages would not require a modification of the judgment.
[] See footnote *, ante.